## BIGLER et al. v. FRYER et al.

No. 5142.   Decided October 10, 1933.   (25 P. [2d] 598.)

*Thatcher & Young,* of Ogden, for appellants.

*J. Wesley Horsley,* of Brigham, for respondents.

FOLLAND, Justice.

This is a suit to adjudicate the waters of the Pack or Barnard spring a natural stream arising on the premises of Robert A. Fryer near Collinston, Box Elder county, Utah. All of the claimants to the water are parties either plaintiff or defendant. The only measurement of the stream was made in June, 1930, which was a low-water year when it flowed 1.044 cubic feet per second. There is testimony that in high-water years it would flow about one-third more. The flow of the spring is fairly constant throughout the irrigation season. The waters of this spring had been used continuously by the parties and their predecessors in interest for upwards of fifty years. The respective users have taken the entire flow in rotation for a stated number of hours. During approximately the first half of that period the turns were taken each two weeks and latterly each week. The court made findings and decree wherein was described the lands owned by the parties on which the water had been used and awarding the use of the waters on such lands as follows: Robert A. Fryer, 27 hours per week; George Fryer, 5 hours per week; estate of George A. Bigler, 44 hours per week; Joseph A. Fryer, 24 hours per week; Edward Bigler, 24 hours per week; Thomas Potter, Robert J. Potter, and Thomas William Potter, 24 hours per week; and J. A. Bigler, 20 hours per week. On this appeal there is no dispute between the parties as to this division of the waters, except appellant Robert A. Fryer claims he should have been awarded 34 instead of 27 hours per week, and that the estate of George A. Bigler should have been awarded 37 hours instead of 44, a difference of 7 hours per week. Appellant further contends there was no competent evidence to sustain the judgment for $33 damages against him and in favor

of respondent, that he was entitled to a decree awarding him secondary rights in the stream, and that the costs should by the trial court have been divided between the parties instead of taxed against him. For convenience, and since the only contest now is between Robert A. Fryer as appellant, and the estate of George A. Bigler as respondent, we shall refer hereafter to these parties as appellant and respondent, respectively. From the evidence adduced and the inference deducible therefrom the original appropriators of the waters of this spring were Mark Bigler, James Standing, and Henry G. Jemmett. The discrepancy now complained of appears in substantially the same amount in the first claims made by these original water users. Mark Bigler and James Standing on August 11, 1884, were each granted water certificates by the selectmen and ex officio water commissioners of Box Elder county wherein Bigler was adjudicated to be entitled to 136/336ths of class 1 of the natural water supply known as Pack or Barnard spring for irrigation purposes, and James Standing was similarly adjudicated to be entitled to 168/336ths of the same spring for irrigation purposes. There are 336 hours in two weeks, and at that early date the water was rotated in use over a period of two weeks, the parties claiming 136 and 168 hours' use in a two-week period, respectively. When the rotation period was changed to every week it would result in the owners of the Standing lands claiming 84 hours a week and the owners of the Bigler lands 68 hours a week. These two men thus claimed the entire flow of the water except 32/336ths or 16 hours a week. No award was made by the water commissioners to Jemmett and not anything is shown in the record as to whether or not he was a party to the adjudications wherein Bigler and Standing were awarded water. The certificates were admitted to show the claims made by Bigler and Standing and the date thereof. *Holman v. Christensen*, 73 Utah 389, 274 P. 457.

The first record of any claim by Henry G. Jemmett to any of the waters in dispute appears under date of Novem-

ber 20, 1885, wherein Henry G. Jemmett conveyed to William and George W. Driver certain lands and water rights including "an undivided one-seventh of the waters of Lower Pack or Barnard spring." The appellant is now the owner of the Jemmett land. In each of the deeds through which appellant deraigns title from Jemmett is found the same language with respect to the conveyance of an undivided 1/7 of the waters of the Pack or Barnard spring. It is thus apparent that as early as 1885 Jemmett claimed to own 1/7 or 48/336ths of the water, or 24 hours a week. Neither of these documents, the deed or water adjudications, are evidence of original appropriation, but are evidence of the claims made by the earliest users of the water who were undoubtedly the ones who made the appropriation of all the waters of the spring during the irrigation season. The record also shows that on February 23, 1886, Henry G. Jemmett filed a claim to "all of the waste waters of what are known as Barnard springs * * * I claim said waste waters and said small springs together with the waters thereof for irrigation purposes." At that early date there was a claim by the three parties to a total of 8 hours more per week than there were hours in the week. The discrepancy has been reduced to 7 hours as will appear later in this opinion.

Joseph A. Fryer and the estate of George A. Bigler are now the owners of the original Mark Bigler lands and claim between them Bigler's 68 hours of water, 24 hours per week to Joseph A. Fryer, and 44 hours per week to the Bigler estate. The James Standing lands are now owned by Edward Bigler, Thomas Potter, and his sons Robert J. and Thomas William, J. A. Bigler, and Robert A. Fryer the appellant, and his 84 hours of water allocated as follows: Edward Bigler, 24 hours; the Potters, 24 hours; J. A. Bigler, 20 hours; and Robert A. Fryer, 16 hours. The portion of the lands and water from the original Standing tract, now owned by appellant, became know as the Ensign tract, and by mesne conveyances were conveyed to the appellant.

The deeds to the Ensign tract describe the water purported to be conveyed as "the 30 hours water right in each two weeks from the Pack or Barnard spring," or the equivalent of 15 hours a week. Part of the Ensign tract was conveyed by appellant to his brother George Fryer together with five hours of water right a week, and in the testimony the distinction between the ownership of Robert A. and George Fryer is not always made and the entire water right of the Ensign tract is frequently referred to as a unit.

The court found, and we think the preponderance of the evidence supports that finding, that, notwithstanding the recitals in the Jemmett and Ensign deeds, for a period of more than 40 years the waters were allotted by the water masters and used by the respective landowners ■ in the proportions awarded by the findings and the decree. That is 16 hours a week water was allocated to and used on the Ensign tract and 16 hours a week on the Jemmett tract, thus giving this appellant 32 hours a week before the sale of a water right of 5 hours a week to George Fryer. Among other witnesses who testified to this allotment and use over a long period of time were the persons who owned and farmed the lands of the Jemmett tract and the Ensign tract prior to appellant's occupancy thereof, and these persons testified to their use of 16 hours a week on each tract. The appellant, while insisting that he had used, not 32 only but 39 hours per week, in his farming operations, testified on cross-examination as follows:

"Q. When did you first decide to claim all the water which you should have had? A. I don't know, I wasn't getting it, I wasn't getting my full turn any of the time.

"Q. When this trouble first came up and you stopped them last summer, you didn't have any notion about claiming that from George Bigler, did you? A. I claimed it in my turn—

"Q. You didn't know whose water you had, did you, at that time? A. Whose water?

"Q. Or who was taking the water that belonged to you; he was not entitled to the water that you claimed you were entitled to? A. I knew it only by the deeds. That is what the deeds called for."

Appellant strongly contends that when the amount of land irrigated by the various owners and particularly that of respondent and appellant are compared these physical facts corroborate him in his contention that he actually and necessarily used the water for 39 hours a week and respondent only used it 37 hours per week. He claims that he has always irrigated 25 acres with this water, while respondent has irrigated only 15. The appellant's lands are the first on the ditch, and respondent's lands are next below him. The other users are still farther from the source of supply, and necessarily the lower users lose more water by evaporation and seepage than would the appellant. As usual in this kind of a case the testimony of the witnesses is not precise or accurate as to the acreage irrigated. The crops planted vary from year to year and some crops, as for illustration sugar beets, require more water than grain or alfalfa. The best conclusion we can make from a reading of the testimony would indicate the acres of land irrigated by each water turn as follows: Joseph A. Fryer, 8 to 15 acres, 24 hours of water; Edward Bigler, 8 to 9 acres, 24 hours; J. A. Bigler, acreage not shown, 20 hours; Bigler estate, 16 acres, 44 hours; Robert A. Fryer, 14 to 15 acres, 32 hours. Robert A. Fryer and his sons claim to have irrigated from 25 to 45 acres of land, but the testimony is so lacking in definiteness, and waters from other sources are referred to as used for irrigation on some of the lands, that we are unable to find that more than 14 or 15 acres have been irrigated from the Pack or Barnard spring, except for a small acreage referred to hereafter which has been irrigated partly from natural seepage from this spring. The only actual survey of the irrigated lands was made by a surveyor who testified for the appellant. His map and testimony based thereon showed a total of measured irrigated lands on respondent's tract of 10.43, and there was undisputed testimony of other witnesses to an additional 5-acre tract which had been cultivated for many years, making a total of 15.43. The total irrigated lands of appellant's tract shown by the

map is a total of 13.43 acres. Appellant's testimony seems to indicate an additional 10-acre irrigated tract not shown on the map, which, so far as we are able to determine from the evidence, was located to the west and below the Hammond canal and was irrigated by waste waters from the Pack or Barnard spring and other small springs which rise in the natural channel leading from the Pack or Barnard spring, and that this tract was not irrigated by any regular turn from the main spring. In view of the fact that respondent's lands were much farther from the source of supply, and that more water would be lost in seepage and evaporation, there is not such a discrepancy in the use of the water as to justify us in reaching a conclusion different from that of the trial court who had the witnesses before him and was in better position to judge of their accuracy and credibility.

Next as to damages. It is alleged that the appellant in July of 1929, without consent of the respondent, unlawfully withheld from respondent the 7 hours' use of water claimed by him, and continued so to withhold such water during subsequent turns of that year to the damage of respondent's crops. The court awarded $33 damages apparently on the theory that damages in the sum of $100 was proved. The land was farmed by a tenant who paid the landlord, the respondent, one-third of the crop as rent. The objection is that there is no competent evidence to support a judgment for more than nominal damages. The testimony on which damages were based are the answers to the following questions asked separate witnesses:

"Q. Do you have an opinion as to how much less the crop was worth at the end of the season than it would have been, taking into consideration the entire season and the condition of the crops in that neighborhood, if the full water had been used?"

Over objection the witness answered, $150.
Another witness was asked:

"Q. What, in your opinion, from your experience with raising other crops in that vicinity, was the shortage in the market value of the

crop after you sold it by reason of the absence of this 7 hours of water?"

Over objection this witness answered, $100.

These questions called for conclusions, the very issue the court should decide. A proper measure of damages would be the rental value of the 7 hours of water, or, if that be not obtainable, the loss to the growing crops as a result of the loss of water. The respondent adopted the latter test, but offered no competent evidence to support it. The rule applicable in such case has been stated by this court in *Sharp* v. *Gianulakis*, 63 Utah 249, 225 P. 337, 339, as follows:

"It has been established by two former opinions of this court [*Cleary* v. *Shand*, 48 Utah 640, 161 P. 453; *Naylor* v. *Floor*, 51 Utah 382, 170 P. 971] that the measure of damages for the destruction of a growing crop is the difference between the market value of the crop before and after the alleged damage; that in attempting to arrive at that damage it is proper to take into consideration the market value of the crop at maturity and deduct its entire market value at maturity in its injured state from the market value if if had been permitted to mature in the ordinary way, and deduct from that amount the cost of harvesting the same and bringing the crop to maturity."

There being no adequate or competent evidence to support the judgment for damages, a judgment for no more than nominal damages can be sustained. The legal right of respondent having been infringed upon by appellant the law presumes damage, but since the amount of actual damages is not shown by competent evidence a judgment for $1 nominal damages is all that may be sustained. The decree should be amended in this particular.

The appellant in his answer sets up an alleged claim to seepage waters from the Pack or Barnard spring and secondary water rights including the waters flowing from the spring during the nonirrigation season. The pleading is as follows:

"That this defendant and his co-defendant George Fryer are now the owners of and entitled to the use of all seepage waters and all

secondary water rights which flow from said spring and which are not otherwise used or conveyed through the ditch heretofore described."

"Defendant further alleges that during the non-irrigation season the waters from said spring are turned down said channel and flow across defendant's premises into Bear River; that defendant has constructed a reservoir on his premises in Section 19 aforesaid and uses said water to fill the same for the purpose of making a fish pond thereon, and that defendant has for many years diverted portions of said water on to his premises during the non-irrigation season."

In its findings of fact the court found that appellant "is entitled to the use of said waters to water his stock whenever he has such use for the same, provided, that such use does not interfere with and destroy the ditches, dams, and outlets of said system, or interfere with the same; and to use any water which escapes from said spring, ditches or reservoir through natural seepage or overflow, but not from any overflow which results from interference with and the changing of the natural outlets provided in said system to maintain levels and the proper use of said water." The decree, however, does not include all that is covered by the finding. Paragraph 3 of the decree should be amended by adding thereto "and to use any water which escapes from said spring, ditches or reservoir through natural seepage or overflow, but not from any overflow which results from interference with and the changing of the natural outlets provided in said system to maintain levels and the proper use of said water."

Appellant contends that he is entitled to a finding and decree awarding him the use of the waters of the spring during the nonirrigation season. As indicated above in his complaint he sets out that he has impounded such waters into a fish pond. The court's finding is that such allegation is not supported by the evidence, as follows:

"The court further finds that there has been no appropriation by defendant, Robert A. Fryer, or any other party to this action, of the use of said waters for fish propagation; or for any purposes other than those hereinbefore found."

After a careful reading of the evidence we are of the opinion that the court could not well have made any other finding than it did on the subject. Appellant's testimony is so indefinite and unsatisfactory with respect to the construction of the dam, or maintenance of a pond or reservoir in the natural channel of this stream, and the use of water therefrom, that no definite findings are possible. Notwithstanding his allegation that he constructed the reservoir and impounded the waters for a fish pond, there is not a word in the evidence in support of such allegation. There is some testimony that at some time a dam of some sort was constructed in the natural channel but at some date several years ago this was washed out and had never been replaced. His testimony also with respect to waters used and the extent of the use is so indefinite that we are unable to suggest any other finding which would be at all satisfactory.

On the matter of costs in the district court we are not disposed to change the trial court's disposition of the matter. This suit was made necessary by the action of appellant in taking the waters claimed by him and to which the court has found he was not entitled; that is, the retaining of the water for 7 additional hours each water turn.

In view of the disposition of the cause in this court we think the costs should be divided, each side to bear half the costs on appeal. With the exceptions noted, the findings and decree of the trial court are affirmed. The cause is remanded to the district court of Box Elder county for the purpose of amending the decree in the particulars indicated.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.