## BURTENSHAW v. BOUNTIFUL IRR. CO.

No. 5746.   Decided October 3, 1936.   (61 P. [2d] 312.)

*Holmgren, Anderson & Russell,* of Salt Lake City, for appellant.

*Rawlings & Wallace* and *Clarence Baird,* all of Salt Lake City, for respondent.

FOLLAND, Justice.

This cause was commenced by plaintiff, a stockholder of defendant, a mutual irrigation company, to require defendant to make repairs in its irrigation ditch, to provide proper headgates, weirs, measuring devices, and equipment for the handling of the water, to diligently maintain and operate the system, to devise a more efficient and equitable method of rotation among the stockholders in the use of the water, and for damages because of alleged negligent or indiligent operation and maintenance of its distribution system over a period of fifteen years past. The case was tried to a jury and limited by the court to an action for damages during

the four years prior to the filing of the complaint. The jury returned a verdict of $300 damages in favor of the plaintiff. From judgment entered on the verdict, defendant appeals.

We are met at the threshhold with the question respecting the nature of the cause, whether it is a suit in equity or an action at law or a combined legal and equitable action. The prayer of the complaint undoubtedly asks for equitable relief as well as for damages. The appeal is from a judgment for money damages only. It is now contended by the defendant that the court should have considered the verdict as advisory only and should have made findings of fact, conclusions of law, and a decree covering not only the issue of damages but also the equitable issues. For the purpose of this case we do not enter into a consideration of this problem for the reason that plaintiff demanded a jury, the case was tried to the jury, verdict was rendered and judgment entered as a law action for damages. No objection was made at any time by defendant to the trial of the cause in the manner in which it was tried or to the entering of judgment on the verdict. As to these matters objection is made for the first time in this court. There has been no disposition of the equitable demands in the complaint, except that the judgment disposes of the case as one for damages only. Defendant did not ask for affirmative relief, and the plaintiff is not now complaining that his demand for equitable relief was not granted. The record discloses that during the progress of the trial the court undoubtedly had in mind that equitable issues might be determined at the trial, but at the time the case was submitted to the jury, the issues were strictly limited, as will hereafter appear. In view of the condition of the record, we do not see how the defendant can complain that equitable relief was neither granted nor expressly denied. Plaintiff has in effect abandoned all claim to the equitable relief prayed for in his complaint. The rule stated in *Houston R. E. I. Co.* v. *Hechler,* 47 Utah

215, 152 P. 726, and *Naylor* v. *Jensen*, 38 Utah, 310, 113 P. 73, 75, is controlling. The court in the Naylor Case said:

"The whole conduct of the case and the proceedings had indicated that all of the parties to the action treated the trial to the jury as a complete trial of the issues, the same as such issues are usually tried and determined in law cases. This being so, we think the district court was right in holding that the parties by their conduct were concluded by the verdict, and could not again try the issues that had been submitted to and passed on by the jury. All of the issues of fact were peculiarly matters for the jury to pass on. The parties all seemed to recognize this fact, and hence did not avail themselves of the opportunity of simply submitting to the jury certain questions of fact, and have the jury answer such questions in accordance with their conclusions. Instead of this, all the issues were submitted to the jury in the usual way and a general verdict asked at their hands. While this may have been somewhat irregular, yet there is nothing made to appear why the trial of the issues in that way was not as fair for one as for the other of the parties, and appellant made no such claim in his motion for a new trial."

For purposes of review, on this appeal we shall test the complaint and proceedings as an action for damages not complicated by any equitable issues.

In the background of this case, is another wherein, in the year 1912, the Bountiful Irrigation Company sued plaintiff Burtenshaw and another to enjoin them from interfering with the distribution system of the company. A judgment was entered in the district court of Davis county enjoining the defendant from such interference and providing that the defendant Burtenshaw take his water on what is known as the "whole turn" method at a point commonly called "The Cave" and on the "half-turn" method at a point known as the "Chadwick Box." The decree further provided that the Bountiful Irrigation Company, plaintiff in that case and defendant here, "in the future is required to use reasonable diligence to maintain the said water system and everything connected therewith in a reasonably good condition, and state of efficiency, to the end that the water flowing in said system may be conserved and delivered to shareholders of said system with as little loss

and inconvenience as is consistent with the condition and circumstances therewith connected."

The plaintiff pleaded in substance that the defendant had failed to observe the conditions of this decree in that it had failed and refused to keep its system in a reasonable state of repair and efficiency in the following respects: By permitting a great number of water users to cut, damage, and impair the banks of its said ditch at numerous points above where plaintiff is required to take his water, and also along the line of canal between the point where plaintiff takes his water from former users and where plaintiff finally places water upon his property, resulting in loss of water to plaintiff, and inefficiency in the handling of that which he receives; that at many points along said canal above where plaintiff finally takes his water therefrom, defendant has not placed proper headgates and facilities for diverting water, or weirs, or measuring equipment to measure or handle the same, resulting in loss of water to plaintiff and extra work on his part; by allowing the canal, headgates, and flumes connected therewith, to become clogged with weeds and debris which obstruct the flow of water, thereby impairing the efficient handling of water and resulting in loss to plaintiff; by not having or causing the water to be at the place where plaintiff was required to go to secure the same, thereby making it necessary for plaintiff on numerous occasions to go a long distance up said canal and to cut and remove numerous earthen dams to secure his water, resulting in loss of water and excessive work by him; by permitting the construction of a large concrete reservoir directly across the channel of said ditch, thereby obstructing the flow of water therein, compelling the water to back up and flow around said reservoir, thereby resulting in loss of water by seepage and otherwise, and causing extra work to plaintiff; by not keeping the ditch clean of rocks, boulders, trees, and debris of various sorts, by permitting the same to accumulate therein, resulting in great holes being washed in the

ditch, and otherwise obstructing the even and proper flow of water over the portion of the ditch that plaintiff was required to wet by leading the water therein, resulting in loss of water and great inconvenience to plaintiff. By reason of the violation of the decree and of the conduct of defendant as alleged, plaintiff claimed to be damaged in the sum of $250 for each of the years from 1916 to 1933, both inclusive, or a total sum of $4000, and prayed for such damages, and that the defendant be required to cement a portion of the ditch, provide proper headgates and other devices, that the ditch be kept clean and for other relief. Demurrer to the amended complaint was overruled. This is assigned as error. The complaint as amended states a cause of action for damages against the defendant corporation, if a stockholder in an incorporated mutual irrigation company may maintain such an action for loss of water occasioned by failure to properly maintain and operate its distribution system. The duty of the defendant corporation to maintain the system in a reasonably good condition and state of efficiency so that the stockholders might obtain their water with as little loss or inconvenience as consistent with the conditions and circumstances connected therewith, was definitely settled in the prior suit between the corporation and Burtenshaw, the decree of which was pleaded in the complaint and relied on by plaintiff. A breach of such duty, if it result in injury, would give rise to an action for damages. The law on the subject is well expressed in the headnote to *Hyink* v. *Low Line Irr. Co.*, 62 Mont. 401, 205 P. 236, 237, as follows:

"A mutual, irrigation company, organized to supply water to its stockholders in proportion to the amount of their stock, is under the duty of using reasonable care and diligence in maintaining its canal and keeping it supplied with water, and of regulating and dividing its use among the stockholders in accordance with their interests, and liable in damages to a stockholder injured by its neglect or failure to discharge such duty."

See, also, *O'Connor* v. *North Truckee Ditch Co.*, 17 Nev. 245, 30 P. 882; *Berg V. Yakima Valley Canal Co.*, 83 Wash.

451, 145 P. 619, L. R. A. 1915D, 292; 3 Kinney on Irr. and Water Rights, (2d) Ed.) 2673; 67 C. J. 1443.

Error is assigned on the rulings of the trial court in permitting plaintiff to show the condition of the ditch at times for which no damages could be awarded because barred by the statute of limitations. At the time these rulings were made, the court undoubtedly had in ▪ mind that some equitable relief might be justified and given, and admitted the evidence as bearing on such questions. When the cause was submitted to the jury, however, the issues were narrowed to embrace only the question of damages for the four-year period immediately preceding the filing of the complaint. With respect to the grounds for recovery, the court instructed the jury as follows:

"You are instructed that this is not a case where defendant has failed or refused to deliver to plaintiff the water to which he, as a stockholder, was entitled. Plaintiff's whole complaint is based upon a claimed loss of water, resulting from the defendant allowing its instrumentalities for delivering water to him to become defective either by its own negligent failure to properly maintain them, or by not preventing others from creating defects. In such case, the burden is on the plaintiff to show by preponderance of the evidence that defendant and its agents did not exercise ordinary care and diligence in maintaining its irrigation system, and as a result of such neglect plaintiff lost a certain amount of water which resulted in certain money damages to him; so that plaintiff must show, with reasonable certainty, the quantity of water thus lost and the resulting loss to him in money value."

Assuming it was error to admit evidence of conditions prior to the four-year period, we are unable to find any prejudice to defendant in view of the court's instructions.

Certain photographs of the ditch, taken in November, 1934, some time after the complaint was filed, were offered and received in evidence. Objection was made that they were incompetent and immaterial, having been taken long after any water had run through the ▪ ditch. Before being received in evidence, witnesses testified that these photographs correctly disclosed conditions that existed during the four-year period allowed for

recovery. These witnesses were examined and cross-examined with respect to the subject. The weight to be given the photographs in the light of the testimony describing conditions of the ditch was for the jury. No error was committed in admitting the exhibits after being properly connected up.

Defendant strenuously urged that its motions for nonsuit and directed verdict should have been granted by the trial court. It will serve no useful purpose to discuss in detail the evidence adduced by plaintiff and by defendant respecting the manner of maintenance and operation ■ of the distribution system of the irrigation company. The evidence was in sharp conflict. There was, however, evidence from which the jury could find, as it did, that the defendant had been guilty of a breach of duty in respect to one or more of the matters complained of in the complaint. This being true, the court rightly submitted the matter to the jury.

A more difficult matter to determine is whether the evidence with respect to damages was sufficient to support the verdict of the jury. Plaintiff attempted to estimate damages only for loss of crops. One cannot read plaintiff's testimony regarding the alleged loss of water and the resulting impairment of crops without a feeling that he was merely guessing at such losses. In fact, on cross-examination, he admitted as much. His reasoning was about ■ like this. He knew he lost water because if he had had more water he would have had a larger yield of alfalfa than the 80 tons obtained from 20 acres, but not having a larger yield, he knew he had lost water because of the claimed defective condition of the ditch and faulty control by defendant. He estimated the amount of hay he would have had had he obtained all the water to which he was entitled would be 25 to 30 tons more per annum. He admitted he measured his hay only one season and for the other years it was a mere estimate. He also testifed that the amount of actual yield was about the average obtained from other

lands similarly situated in the locality. He frankly admitted he had not made or attempted to make any exact measurements of either water or hay because he thought the defendant corporation would take care of the situation without suit. We recognize the fact that damages are not always susceptible to exact and accurate proof and that a great deal of latitude must be taken by the jury in fixing the amount of damages in such cases. The applicable rule is stated in 17 C. J. 756, as follows:

"The rule against the recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent. In other words, the rule against uncertain or contingent damages applies only to such damages as are not the certain results of the breach, and not to such as are the certain results but uncertain in amount. In many cases, although substantial damages are established, their amount is, in so far as susceptible of pecuniary admeasurement, either entirely uncertain or extremely difficult of ascertainment; in such cases plaintiff is not denied all right of recovery, and the amount is fixed by the jury in the exercise of a sound discretion under proper instructions from the court."

The difficulty with the proof is not so much uncertainty as to measure of the damages, but uncertainty as to whether any substantial damage resulted. If plaintiff's testimony is taken as true, he undoubtedly suffered some inconvenience and may have suffered some loss of water. Under this state of the record he would be entitled to nominal damages if the jury found the defendant guilty of negligence as charged, so the court would not be justified in taking the case from the jury, but should have submitted it to the jury to find on the question of negligence to be followed by a verdict of nominal damages only in case they find against the defendant. *Bigler* v. *Fryer*, 82 Utah 380, 25 P. (2d) 598.

Exception was taken to three of the court's instructions and to the refusal to give certain instructions requested by the defendant. It is not important to discuss any of these except instruction No. 2, which was given by the court, and which is as follows:

"You are instructed that it was the legal duty of the Bountiful Irrigation Company, acting through its board of directors to distribute to each stockholder of said corporation or person entitled to receive water therefrom his proportionate share of the water owned, controlled and managed by said company."

This instruction, thus broadly stating defendant's duty, is misleading and erroneous. The reasonable inference from it is that the defendant was under a duty to deliver to plaintiff at his farm or headgate, the water to which he was entitled without regard to the admitted fact that it was plaintiff's duty to go to the "Chadwick Box" and the "Cave" and take his water at the times indicated by his ticket from the watermaster. Each of the stockholders had the same duty with respect to his own water. When the water was in the ditch below the "Chadwick Box," the loss incident to wetting the ditch and the normal loss by evaporation and seepage had to be borne by plaintiff. It was at no time claimed that defendant was under a duty to distribute plaintiff's water either at his headgate or at his farm.

In the district court defendant moved the court to retax costs following the filing of the cost bill. Defendant contended that the witnesses were entitled to per diem for only the day or days on which they actually testified and not for each day in attendance at court, and that such witnesses were entitled to mileage in going to the place of trial only and were not entitled to mileage for each successive day of the trial. Costs were taxed on the theory that witnesses were entitled to mileage each day they attended court. Plaintiff now contends that the cost bill was rightly drawn and that the witnesses were entitled to witness fees and mileage for each day they were in attendance at court. It is settled in this state that the prevailing party is entitled to tax as costs the statutory per diem for witnesses subpoenaed in good faith and actually attending the trial even though they may not have testified each day of attendance or at all. If they have been excused from attendance, they cannot obtain the per diem thereafter. It is with-

in the discretion of the trial court to prevent any abuse incident to the taxing of costs. *Thomas* v. *Frost*, 83 Utah 207, 27 P. (2d) 459. Mileage for each day such witnesses attended court should not have been allowed. The statute, section 28-5-4, R. S. Utah 1933, reads as follows:

"Every witness legally required, or in good faith requested, to attend upon the district court or a grand jury is entitled to $3 per day for each day in attendance, and 20 cents for each mile actually and necessarily traveled, in going only."

The phrase, "going only," has reference to going to attend the trial and is not the equivalent of "for each day in attendance." We take notice of the fact that 20 cents per mile is far in excess of the actual cost of traveling a mile going and a mile returning, and if such were allowed for attending court each day during the trial, the costs might well become unjustly oppressive to litigants. The statute intended mileage to cover the cost of transportation rather than a bonus or compensation to the witness. The amount of the mileage provided by the statute together with the words "going only," clearly contemplated the construction we have given the statute. Appellant cites *Booth* v. *H. S. Kerbaugh*, 82 Misc. 57, 143 N. Y. S. 624 and *O'Rourke* v. *Degnon R. & T. I. Co.*, 139 App. Div. 695, 124 N. Y. S. 364, and respondent cites *Independent Packing Co.* v. *Burns*, 168 Ill. App. 482, in support of their respective contentions. The cases are not in point because of difference in facts and wording of the statutes. Costs should be retaxed by allowing mileage only once for the miles necessarily traveled going to the trial. The per diem of witnesses for the days actually in attendance under subpoena or good faith request was properly taxed.

For the reasons stated, the judgment is reversed, and the cause remanded to the district court of Davis county for a new trial. Costs to the appellant.

ELIAS HANSEN, C. J., and EPHRAIM HANSON and MOFFAT, JJ., concur.

WOLFE, Justice.

I concur. I wish to say, however, that if it were not necessary to reverse the judgment on other grounds I would not agree that instruction No. 2 was prejudicial so as to require a reversal. Certainly, after all the evidence it was sufficiently manifest to the jury that plaintiff had to take his water from the "Chadwick Box." In light of this uncontroverted evidence, the phrase "to distribute to each stockholder," I think would have been necessarily interpreted as meaning "keep in the ditch for each stockholder." But since the judgment must be reversed for other reasons, I think it advisable to suggest making the language more accurate.