## BAIRD v. UPPER CANAL IRR. CO. et al.

No. 4508.   Decided June 14, 1927.   (257 P. 1060.)

58

*Stewart, Alexander & Budge,* of Salt Lake City, for appellant.

*E. D. Sorenson* and *G. A. Iverson,* both of Salt Lake City, for respondent.

HANSEN, J.

The plaintiff brought this action against the defendants for the purpose of securing an order requiring the defendants to make a connection between the pipe line of the plaintiff and the main line of the defendant irrigation company, so that the plaintiff can secure water through her pipe line to supply water for culinary and domestic use for 12 or 13 houses and premises that plaintiff has agreed to furnish with water. A general demurrer was filed to the plaintiffs complaint by the defendant Upper Canal Irrigation Company, which demurrer being overruled, the defendant Upper Canal Irrigation Company answered. The defendant Salt Lake City did not answer or otherwise plead to plaintiff's complaint, and at the trial its attorney stated that Salt Lake City had no interest in the controversy and that it had not received an order from the Upper Canal Irrigation Company to make the connection in controversy, and hence had not made the same.

Upon the issues joined by plaintiff's complaint and the defendant's answer thereto a trial was had, which resulted in a judgment or decree in favor of the plaintiff and against the defendant, by the terms of which the defendant Upper Canal Irrigation Company through its board of directors was ordered to immediately authorize and order the defendant Salt Lake City to connect plaintiff's private pipe line with the main line of the defendant irrigation company, and the defendant Salt Lake City was ordered to make such connection immediately upon being authorized to do so by the defendant Upper Canal Irrigation Company; that the costs

and expenses of making such connection and all of the material and labor connected therewith be paid by the plaintiff. The connection to be made was to be a one-inch connection and made so as to efficiently divert water from the main pipe line of the Upper Canal Irrigation Company into the private pipe line of the plaintiff and be made according to accepted engineering standards.

The defendant Upper Canal Irrigation Company alone appeals from the judgment.

There is no substantial conflict in the evidence as to the facts in this case. To understand this controversy, it is necessary to briefly relate these facts.

The defendant Upper Canal Irrigation Company is, and for a number of years has been, a corporation organized and existing under the laws of the state of Utah, and is engaged in the operation of an irrigation system for the irrigation of farm lands, and also a pipe line for conveying to and distributing among its stockholders and other persons water for culinary and domestic purposes. Salt Lake City is a municipal corporation, and as such controls and distributes water to its inhabitants. In August, 1921, the defendant Upper Canal Irrigation Company and Salt Lake City entered into a written contract, by the terms of which the company agreed to exchange most of its water then obtained from Big Cottonwood creek for water to be furnished by the city from the Jordan river. Part of the water of Big Cottonwood creek, however, was reserved by the company for culinary and domestic uses. Among the various provisions of this contract are the following.

"Whereas, the company is the owner of certain waters and water rights in Big Cottonwood creek, Salt Lake County, Utah, * * * and

"Whereas, the city is desirous of securing the use of certain of said waters so owned by the company. * * *

"Now, therefore, * * * the company hereby grants, conveys, and transfers to the city the right to use perpetually from Big Cottonwood creek all the portion of the waters of Big Cottonwood creek which the company owns, excepting and reserving therefrom to the company, during a period from and including April 1st to October

1st of each year, a perpetual, constant flow of the said waters of Big Cottonwood creek equal in quantity to 1,260,000 gallons of water every 24 hours, which is equivalent to a constant flow of 1.95 second-feet of water, and excepting and reserving therefrom to the company, during a period from and including October 1st to April 1st of each year, a perpetual constant flow of the said waters of Big Cottonwood creek equal in quantity to 700,000 gallons every 24 hours, which is equivalent to a constant flow of 1.083 second-feet of water. All of said water so excepted and reserved to the company shall be delievered and distributed by the city to the company in a pipe line to be constructed and maintained by the city as hereinafter specifically set forth. * * *

"The city, at its own cost and expense, agrees to properly construct and perpetually maintain, through the territory and along the highways and courses hereinafter described, an efficient pipe line system, hereafter referred to as the 'Mains,' with water pipes of such size, quality, capacity, and kind and proportioned as to size and manner of construction as to accord with the accepted standards of engineering, which will efficiently carry and distribute to the company from Big Cottonwood creek the waters so reserved and retained by the company for the company's own exclusive use, * * * and will keep the water pressure therein equal to at least 10 pounds to the square inch, but in any event ample pressure shall be maintained throughout the entire system. * * * All connections to the mains shall be made by the city's employees on the company's orders at actual cost to the company. The city shall make provision for connections with the mains along the course of the mains in contemplation of the company necessities and community growth. * * * If at any time the company desires water in its mains in excess of the quantity of water to be delivered by the city to the company, as herein provided, and if at such time the city has any water in excess of its municipal needs, the city agrees to furnish to the company such quantity of water at the regular Salt Lake City water rates at the time of the use."

The plaintiff is the owner of 10½ shares of the capital stock of the Upper Canal Irrigation Company. The total outstanding stock of said corporation is about 2,835 shares, At the time of the trial of this cause there were about 275 connections with the main pipe line, of which number about 70 were nonstockholders and the remainder were stockholders. In December, 1923, a resolution was passed by the board of directors of defendant company and approved

by the stockholders, allowing nonstockholders connections with the main pipe line provided they signed an agreement that, if the time came when there was only enough water for the stockholders, such nonstockholders would be shut off. There are no meters used in the system for measuring the water consumed by the various users and no reservoir to conserve the water. The city, however, maintains a meter at the intake of the pipe line to determine the amount of the inflow into the company's pipe line.

On February 27, 1926, the plaintiff, through her agent, W. Eccles Baird, applied to the defendant company, for a connection of her private pipe line with the main line of the company. At the time this application was made plaintiff paid to the defendant company the sum of $72.50 to defray the expense of making the connection. When the application and money were delivered to Charles M. Bolton, the secretary and manager of the defendant company, the latter informed plaintiff that the connection applied for would be made. A day or two thereafter Bolton informed plaintiff's agent that the company had a blanket franchise, for laying pipe lines, from the city, and he, Bolton, designated where the pipe line should be laid. Thereupon plaintiff constructed the pipe line at a cost of between $1,600 and $1,800. The plaintiff had an agreement with the persons to be served with water whereby she was to be reimbursed for her outlay in the event the water was actually furnished.

As manager of the company, Bolton attended to the distribution of the irrigation water to the stockholders, received applications and payments for making connections for culinary water, made such connections, and attended generally to the business of the company without any special direction or authorization from the board of directors.

On March 15, 1926, new officers of the company were elected, and the stockholders directed the board of directors of the company not to make any connections which would divert any culinary water outside of the territory covered by the canal system. The pipe line of the plaintiff would

divert water outside of the territory covered by the canal system. This action was taken by the stockholders because the water pressure in the upper part of the pipe line was being so reduced during the daytime, that is to say from 5:30 a. m. to 9 p. m., that at times the force was not sufficient to force the water out of the taps in some of the homes. During the remainder of the 24 hours—that is, from 9 p. m. till 5:30 a. m.—very little water is consumed by those having connections with the company's main line. The water not consumed is permitted to flow into the water system of Salt Lake City. The board of directors of the company refused to permit the connection of plaintiff's pipe line with its main line, and the plaintiff brought this action to compel defendant company to permit such connection to be made.

The defendant company assigns various errors on this appeal and contends that the trial court failed to find upon some of the material issues in the case; that the evidence does not support or sustain the findings of fact; and that there are not sufficient facts found to sustain the decree.

The plaintiff in her complaint alleges that she has been by reason of the failure, neglect, and refusal of the defendant company to make the connection, damaged in a sum exceeding $1,500. There is also a prayer for judgment against the defendant for the sum of $1,500. The defendant company in its answer denies that the plaintiff has been damaged. At the trial no evidence was offered on the issue of damages and the trial court made no direct finding upon this issue, but in the preamble to the findings of fact it is stated that:

"It was stipulated in open court by the parties, through their respective attorneys, that this case be submitted to the court upon the merits, and the court consider, pass upon, and adjudicate all questions of law and all issuable facts arising out of said complaint and the answer of the defendant irrigation company except the issue relating to the accrued damages, it being agreed by counsel for the plaintiff, in consideration of said case being submitted upon its merits, that the issue as to accrued damages be waived."

An examination of the record fails to show that any stipulation was entered into between counsel as indicated in the preamble to the findings of fact. Counsel for defendant company correctly contends that it is the well-settled law in this jurisdiction that it is the duty of a trial court in contested cases to find upon all material issues submitted for decision unless findings are waived. *Mitchell* v. *Jensen,* 29 Utah 346, 81 P. 165; *Everett* v. *Jones,* 32 Utah 489, 91 P. 360; *Dillon Imp. Co.* v. *Cleaveland,* 32 Utah 1, 88 P. 670; *Holm v. Holm,* 44 Utah 242, 139 P. 937; *I. X. L. Stores Co.* v. *Moon,* 49 Utah 262, 162, P. 622; *Snyder* v. *Allen,* 51 Utah 291, 169 P. 945; *Hillyard* v. *Dist. Court* (Utah) 249 P. 806. In this case, however, plaintiff contends that any claim for damages she may have had was waived in the trial court. The record is by no means clear that the plaintiff did waive her claim for damages in the court below, but, as plaintiff here insists that the damages were waived and the trial court so indicated in the preamble to its findings of fact, there can no longer be any controversy as to this phase of the case. Certainly, if plaintiff desires to have judgment entered against her to the effect that she is not entitled to any judgment against the defendant company for damages the defendant company cannot be heard to complain.

A more serious question is presented by reason of the failure of the trial court to make findings upon other issues raised by the pleadings. In paragraphs 9 and 10 of plaintiff's complaint it is alleged:

"(9)   That there is ample water owned and under the control of said defendant irrigation company to supply the demands and requirements of the plaintiff, and said company is in a position to and can readily supply the quantity of water which the plaintiff desires to convey through its said pipe line in the event the connection is made as aforesaid. * * *

"(10)   That the plaintiff is a stockholder of record in said defendant irrigation company and entitled to have such quantity of water as may be necessary and in proportion to the rights represented

by the stock so held by her conveyed through said pipe line" of the plaintiff and the main line of the defendant irrigation company.

The defendant company in its answer denies each and every allegation in paragraph 9 of plaintiff's complaint, and in answer to paragraph 10 thereof admits and alleges as follows:

"Answering paragraph 10 of said complaint, this defendant admits that the plaintiff is a stockholder of record in the defendant company, but alleges in this respect that the plaintiff now has three connections with the pipe line of said defendant irrigation company, which said connections convey to the plaintiff the quantity of water, for culinary and domestic purposes, to which the plaintiff is entitled as such stockholder, and this defendant further alleges that if connection is made with the plaintiff's alleged pipe line the water taken therein will be taken to and will supply territory which is not now and never has been covered and supplied by the Upper Canal Irrigation Company, or by its system and the parties to whom water will be supplied by plaintiff's alleged pipe line are not stockholders of this defendant company and are in no manner interested in or connected with this defendant company."

The findings of fact are silent as to whether or not defendant company has water with which to supply plaintiff's pipe line, and are also silent as to whether or not plaintiff is entitled to have additional water delivered to her. We are of the opinion that these are material issues and that the court was in error in failing to make findings thereon. This is not a suit to quiet title to water rights, but at the same time the plaintiff is not entitled to a connection unless she is entitled to some of the waters from the main pipe line. Plaintiff here seeks a writ of mandamus, which, while directed to the securing of a connection between plaintiff's pipe line and the main line of the defendant company, has for its ultimate object the securing of water to which the plaintiff claims she is entitled. Doubtless the writ would not issue if it merely sought the connection without regard to its purpose. It would therefore seem

that the test of whether the writ should or should not issue is whether or not the plaintiff is entitled to the use of any of the water in the main pipe line of the defendant company.

In 3 Kinney on Irrigation and Water Rights, in section 1649, p. 3024, the law is thus stated:

"Before a writ of mandamus will be granted by the court, and the defendant ordered to furnish the plaintiff the water demanded, there must have been found to exist the following essentials: First, that the duty is imposed upon the defendant to furnish the water; second, that the plaintiff has the right to demand the performance of that duty and to be furnished with the water; third, that a legal demand has been made, accompanied with a payment or a tender of the established rates; fourth, that the defendant has the water under its control which it can furnish the plaintiff, without impairing the rights of others previously entitled to the same; and, fifth, that the plaintiff has no plain, speedy, or adequate remedy at law."

There is no question in this case but that a legal demand has been made and the necessary money has been paid. Nor, assuming that plaintiff has the right to a delivery of the water into her pipe line from defendant's main line, can it be said that the plaintiff has a plain, speedy, or adequate remedy at law. It is admitted in this case that the plaintiff is the owner of 10.5 shares of stock in the defendant company. It is also admitted that the defendant company is engaged in the business of regulating and distributing water for irrigation, culinary, and domestic purposes to its stockholders and others. The evidence shows without any conflict that most, if not all, of the nonstockholders who are using water from the defendant's pipe line have no right to the use of any of such water whenever such water is necessary to meet the demands of the stockholders. The evidence further shows without conflict that the flow to which defendant company is entitled is constant, and that between the hours of about 9 p. m. until about 5:30 a. m. of the following day practically

none of the water in the main pipe line of defendant company is used either by stockholders or nonstockholders. ■ At the trial it was made to appear that, while plaintiff had three connections with the main pipe line of defendant company, she was willing, if necessary, to curtail her use of the water from three connections in such manner that some of the water thus used could be delivered through the proposed pipe line. Even though it be conceded that the plaintiff has been using, and still continues to use, the water to which she is entitled during the hours from 5:30 a. m. to 9 p. m., she is entitled to the use of her proportion of the waters which flow unused through the main pipe line during the remainder of the 24 hours. If necessary, she may conserve this water by means of cisterns, tanks, or other containers, during the nighttime for use during the day, or, should she desire to use this water without storage, she has a legal right to a connection when such water may be available. In this arid section water, whether used for irrigation, culinary, or domestic purposes, is too valuable to be wasted when it can be put to a beneficial use.

It is insisted in appellant's brief that plaintiff's complaint is defective and uncertain in that it does not allege whether the right to the use of water through defendant's pipe line is based upon a right imposed by statute or is ■ claimed by virtue of her being a stockholder in a mutual corporation, or by virtue of a contract with the defendant company. Whatever uncertainty there may be in the complaint in this respect it was not raised in the court below by special demurrer or otherwise. We are of the opinion that the complaint does state facts sufficient to state a cause of action, and that is the only ground upon which the complaint was questioned in the trial court.

The evidence in this case, as well as a statement by counsel for defendant in answer to an inquiry from the

trial court, shows conclusively that the defendant corporation is a mutual corporation engaged in regulating and distributing water to its stockholders for irrigation, culinary, and domestic purposes, and only the surplus water is furnished to nonstockholders. In the absence of any arrangement to the contrary, water in a mutual corporation must be delivered in proportion to the stock owned. The board of directors, as a matter of law, owes the duty to distribute to each stockholder his proper proportion of the water available for distribution among the stockholders. Nor do we see upon what theory the stockholders of the defendant company claim the right to limit the use of the culinary and domestic water to the homes and premises within the area irrigated by water controlled and regulated by the defendant company. When a stockholder has the water to which he is entitled delivered into his private pipe line, it becomes his personal property. One of the incidents of the ownership of property is the right to use, lease, or otherwise dispose of the same as the owner may desire so long as the rights of others are not interfered with. In this case it is difficult to see how the rights of the other stockholders would be affected by the mere fact that the water flows out of a private pipe line beyond the limits of the land irrigated by water controlled by the defendant company rather than within such boundary lines. A regulation made solely upon such a basis is an unwarranted interference withe the rights of stockholders not consenting thereto. Apparently the board of directors has recognized that such a regulation is unwarranted, because since the passing of the resolution directing them not to permit such use they have authorized connections to be made for the use of culinary water without the area irrigated by waters under the control of the company.

A further contention is made that if plaintiff is permitted to make the connection at the place indicated it will reduce the pressure on the higher portion of the main pipe line to such an extent that the upper users will be

unable to secure the water to which they are entitled. A complete answer to this objection is the fact that the city has by its contract with the defendant company agreed to maintain the pressure so that all will be furnished with water. Salt Lake City has no objection to making the connection, and in the absence of any proof to the contrary it is proper to assume that the city will devise means to over-come such anticipated difficulty if the same has not already been done.

As before indicated, this is not a suit in equity to quiet title to any water rights. Neither under the pleadings nor the proof can a court properly determine the amount of water which the plaintiff is entitled to have delivered through the proposed pipe line. Such, of course will depend upon the amount that is delivered through the other connections. The company, of course has the right and, if necessary to protect other stockholders, the duty to make regulations, by the use of water meters or otherwise, to curtail plaintiff's use to the amount to which she is entitled.

Defendant assigns as error a number of rulings of the trial court upon the admission of evidence. The competent evidence in this case is ample to sustain the findings made by the trial court. In fact, there is no substantial conflict in the evidence. It therefore follows that no prejudicial error could have been committed by the admission of the evidence complained of, and therefore a discussion of these rulings is needless. Error is also assigned that there is no evidence to support the finding that plaintiff obtained a right of way from various property owners for the construction of a private pipe line. The evidence does not support this finding, but the evidence does show that the pipe line was constructed along the line indicated by Charles M. Bolton, the secretary and manager of defendant company. It further appears that Bolton informed plaintiff's agent that the defendant company has a blanket franchise from Salt Lake City for the construc-

tion of pipe lines.   It is a proper inference that plaintiff's pipe line, or at least a part thereof, was constructed under a right granted by Salt Lake City.   The source of plaintiff's title to a right of way for her pipe line is not material to plaintiff's cause of action, and therefore the error complained of is not prejudicial.

We have examined all of the other assignments of error claimed by defendant company and are of the opinion that they are without merit.   We are of the opinion that the decree of the trial court is sustained by the facts in this case.

Since the enactment of Comp. Laws Utah 1917, § 6995, an appellate court "may reverse, affirm, or modify any order or judgment appealed from, and may, in case the findings are incomplete in any respect, order the court from which the appeal is taken to add to, modify, or complete the findings, so as to make the same conform to the issues presented * * * and may direct the trial court to enter judgment in accordance with the findings when corrected as aforesaid."   In view of the fact that the only error concerning which the appellant has just cause to complain is the failure of the trial court to find upon all of the material issues in the case, we are of the opinion that a proper dispostion of this case demands that the trial court be directed to make findings upon these issues and to amend the conclusions of law and judgment accordingly.   It is therefore ordered that this case be remanded to the trial court with directions to add findings of fact and conclusions of law to the effect that there is water under the control of the defendant irrigation company represented by plaintiff's 10½ shares of stock in that company, and that she is entitled to have the available water represented by her stock conveyed to her through her proposed pipe line or through the other connections heretofore made with the defendant company's pipe line, or both, as she may direct; that the plaintiff has waived any right that she may have had to any damages from the defendant company by

reason of the failure to make the connection of her pipe line with the pipe line of the defendant company; that the conclusions of law and decree herein be amended to the effect that the plaintiff is not entitled to any judgment for damages by reason of the failure of the defendant company to connect plaintiff's pipe line with the pipe line of defendant company. With these amendments the decree and judgment are affirmed. Neither party to recover costs on appeal.

THURMAN, C. J., and GIDEON, CHERRY, and STRAUP, JJ., concur.