[Civ. No. 3477.   Fourth Dist.   Jan. 22, 1948.]

IRVIN DUZE, Plaintiff and Appellant, v. SOUTH ELSIN-
ORE MUTUAL WATER COMPANY (a Corporation)
et al., Defendants and Appellants.

Joe Wapner for Plaintiff and Appellant.

William A. Wood for Defendants and Appellants.

BARNARD, P. J.—This is an action by a stockholder in a mutual water company to compel the delivery of water to him in a certain manner.

The defendant corporation was organized in 1912, and since that time has supplied water to its stockholders for domestic use, and for irrigation use upon lands within a certain area, although its name was changed to the present name in 1917. The company has certain wells, pumping plants, reservoirs and pipe lines extending through various portions of the area within the district it was designed to serve. Since 1917, the company has relaid some of these pipe lines as they have worn out but, until after the trial of this action, has not extended these pipe lines or laid new ones. Since 1917, the company has not built any pipe lines to the property of its stockholders, and any additional pipe lines for the purpose of serving water to lands not previously served have been laid by the property owners and not by the company.

In August, 1944, the plaintiff purchased certain land at the edge of the area designed to be served by the company, and on higher ground which had not theretofore been served with irrigation water. The higher part of his land is from 75 to 100 feet higher than the lower portion. He also acquired certain shares in the defendant company. The company serves him with domestic water through a smaller pipe line, but irrigation water has never been furnished to any part of that land. The plaintiff attended a meeting of the defendant's board of directors in September, 1944, and in response to his request that irrigation water be furnished to him upon his land he was told that if he would lay his own line to hook up with the company system he would receive his proportionate share of available water.

In 1943, the company had secured a loan from the Farm Security Administration for the purpose of developing additional water facilities and for certain improvements. It was planned, among other things, to install a new well some 3,000 feet from the plaintiff's land and to install a pipe line to a reservoir above plaintiff's land to serve lands in that area. The funds proved insufficient to complete the improvements planned. This new well was installed but a pipe line and reservoir could not be built, and a further loan was applied for which had not been received at the time of the trial. On September 22, 1945, the company levied an assessment on its stock for the purpose of making further repairs and improvements to its system.

On October 10, 1945, the plaintiff brought this action against the water company and its officers. The first cause of action sought a writ of mandate directing defendants to supply and deliver water to the plaintiff's land and to the highest point thereon. The second cause of action asked that the defendants be enjoined from selling the plaintiff's stock by reason of his failure to pay the assessment levied until such time as the company should deliver water to him at the highest point on his land. A third cause of action was for damages claimed to have been sustained by reason of the company's failure to furnish water in this manner during the crop season of 1945.

After a trial, the court entered a judgment directing the issuance of a writ of mandate requiring the defendants to supply and deliver water to within 50 feet of the plaintiff's land; restraining the defendants from selling the plaintiff's stock for default in the payment of assessments until such time as they had complied with the writ of mandate; and denying the plaintiff any relief on his third cause of action. The plaintiff and the defendants separately appealed from portions of this judgment. For convenience, the defendant corporation will be referred to as the defendant.

On his appeal the plaintiff first contends that the articles of incorporation and by-laws of the defendant constitute a contract between him and the defendant; that it conclusively appears from this contract that the defendant was in duty bound to supply his share of water to him and to deliver that water to him at the highest point on his land; that the contract is capable of no other interpretation; and that the

court erroneously misconstrued the contract in refusing to grant the requested relief to require the defendant to deliver his share of the water at the highest point on his land. He relies on the provisions of the articles of incorporation of the defendant, which state that the corporation may acquire wells, reservoirs, pipe lines, and other works "for distributing water, and furnishing and delivering water for irrigation and domestic uses to its Stockholders upon such lands as may come under the water system of said Corporation, as shall be provided in the by-laws thereof" and also "To engage in the business of distributing, supplying and delivering water for irrigation and domestic use. Said water to be distributed, supplied or delivered to owners of capital stock of this Corporation," and to provisions of the by-laws reiterating these purposes and providing that the water shall be delivered "through the pipe lines and conduits of the Company for actual use of the Stockholders."

If these provisions of the articles of incorporation and by-laws were alone considered the plaintiff's novel contention could not be sustained. If such a rule had been applied, few irrigation districts and water companies could have survived and the irrigation development of the state would still be in its infancy.

Aside from the proper interpretation of the provisions thus relied on by the plaintiff, he ignores other provisions of the by-laws. The by-laws also provide that the stockholders shall share equally in the available water in proportion to the shares of stock owned, and not to the amount of land owned or irrigated; that the available water shall be deemed to be the amount capable of actual delivery through the lines of the company; that the water represented by the shares of stock shall not be appurtenant to any specific parcels of land; that the directors may require the stockholders to designate each season the particular land upon which they propose to use their water; and that "the water produced or delivered by this Company shall only be used by its Stockholders, upon such land as shall be under the flow of the pipe lines or conduits of the Company, and upon which water can be delivered from the mains, conduits, gates and turnouts of the Company, without extra expense to the Company."

Moreover, the uncontradicted evidence very conclusively shows that during a period of at least 30 years the company had delivered water only at its existing pipe lines;

that in no instance had it delivered water to stockholders by constructing at its own expense facilities designed to take water to the property of a particular stockholder; that in a number of instances it had refused to make such installations for the benefit of individuals, including company officers; and that in all cases stockholders had been required to build their own connecting lines where such were necessary. This custom and usage had been known and acquiesced in by all stockholders for many years. This usage and practice is fully confirmed, even by the few excerpts from the minutes of the corporation which were introduced in evidence by the plaintiff. The plaintiff argues that this usage was not binding upon him since it was not shown that he knew of it. The only inference which may reasonably be drawn is that this usage and practice was known to all of the stockholders for many years, and it must have been known to plaintiff's predecessor. It fully appears that he purchased his stock without making any investigation of any kind as to the method or manner in which the business of the corporation was being, and had been, conducted.

While the judgment in this respect may have been too favorable to the plaintiff it is not vulnerable to the attack made upon it by the plaintiff, to the effect that it does not go far enough and that it should have required the defendant to deliver water to him at the highest point on his land.

■ The plaintiff further contends that the evidence is not sufficient to support that part of the judgment denying him relief on his third cause of action. This contention is without merit, both because the defendant was under no obligation to deliver water to the plaintiff at the highest point on his land and because the evidence on the damage issue fully supports the court's finding and judgment in that regard.

The defendant gave notice of appeal from that portion of the judgment requiring it to deliver water to a point not more than 50 feet from the plaintiff's land, and from that portion of the judgment restraining it from selling the plaintiff's stock for nonpayment of assessment until it had complied with the other order. Neither of these matters are directly presented in defendant's brief. ■ It is contended, however, that the trial court abused its discretion in denying defendant's motion for permission to file a supplemental answer.

It appears that at the time this case went to trial the nearest point on defendant's system at which the plaintiff could take irrigation water was several thousand feet distant from the plaintiff's land. After the trial but before a judgment was entered, the defendant had extended its system to a point 250 feet from the plaintiff's land. On July 2, 1946, the court filed a written opinion indicating an intention to enter a judgment requiring the defendant to supply water to the plaintiff at a point which was at a reasonable distance from plaintiff's land and from which the plaintiff might construct a necessary connecting line without unreasonable expense to himself. On August 1, 1946, an amendment to this opinion was filed changing the requirement just referred to so that the defendant should be required to furnish water at a point not more than 50 feet from the plaintiff's land. Apparently, the defendant had theretofore offered to do this and thereafter, under date of August 12, 1946, the directors of the defendant made a formal written offer to the plaintiff to supply water to him at a point 50 feet from his land. Thereafter, the defendant presented to the court a copy of this formal offer with certain affidavits showing that water was then available at a point 250 feet from plaintiff's land, and that the defendant was prepared to bring this water to a point within 50 feet of said land at the plaintiff's request, together with a copy of a proposed supplemental answer setting forth the same facts. The court later made an order denying permission to file this answer and entered judgment as above set forth.

In view of the fact that the court adopted and inserted in its judgment the things which the defendant desired to allege in its supplemental answer no possible prejudice to the defendant resulted. No reason appears in law or in fact for the court's action in requiring, by its judgment, that the defendant deliver water to a point not more than 50 feet distant from the plaintiff's land, other than the fact that an offer to do this had been brought to the attention of the court. If there be error in this respect, in the court's judgment, it was invited by the defendant. The judgment is in accordance with the request made by the defendant and no prejudice appears. This was an equity case and no reason is assigned why the court should not have restrained the sale of the plaintiff's stock for the nonpayment of this assessment until the other order, invited by the defendant, was complied with.

Another point raised by the defendant is without merit and a further point is immaterial under the facts now existing.

The judgment is affirmed, each party to pay its own costs on appeal.

Griffin, J., and Marks, J., concurred.

Plaintiff and appellant's petition for a hearing by the Supreme Court was denied March 18, 1948. Carter, J., and Schauer, J., voted for a hearing.