Lucius R. SWASEY, George L. Swasey and John A. Swasey, Plaintiffs and Appellants,

v.

ROCKY POINT DITCH COMPANY, a corporation, Melvin J. Abbott, Howard M. Cowan, Harvey Gee, Kipp Merkley, John Munz, Lloyd Remund et al., Defendants and Respondents.

No. 16507.

Supreme Court of Utah.

Sept. 4, 1980.

---

9. See U.C.A., 1953, 70A-3-201(3).

10. See 11 Am.Jur.2d, Bills and Notes, Sec. 193.

M. Dayle Jeffs of Jeffs & Jeffs, Provo, for plaintiffs and appellants.

E. Craig Smay of Berman & Giauque, Park City, for defendants and respondents.

MAUGHAN, Justice:

Plaintiffs initiated this action to secure injunctive relief and damages against de-

fendant, a mutual ditch company.[1] Defendant counterclaimed, seeking a declaration of its obligation to plaintiffs under the company's articles of incorporation and the laws of this state. The matter was tried before the court and all issues were determined adversely to plaintiffs' claims. The judgment of the trial court is affirmed with the exception of the determination concerning the assessment for "new" water, which is remanded for further hearing in accordance with this opinion. All statutory references are to Utah Code Annotated, 1953, as amended. No costs are awarded.

Plaintiffs are shareholders in defendant; the water rights represented by shares of stock are herein identified as "old" water. In addition, by court decree the State Engineer was ordered to grant certain water applications of defendant to appropriate certain high water rights in the Duchesne River on particular acreage in Duchesne County. Plaintiffs are the owners of some of this acreage upon which beneficial use of the water is to be made in accordance with the applications. Proof of this appropriation as required by Section 73–3–16 has not been made and consequently no certificate has been issued by the state engineer as provided in 73–3–17. The water diverted under these applications is identified as "new" water.

Defendant operates three ditches in its system, which are identified as laterals "A," "B," and "C." Water is diverted from the Duchesne River into lateral A. B and C laterals are branches of A; B traverses the bench lands, and C proceeds along a course at lower elevations.

Before the trial court and on this appeal, plaintiffs have sought a mandatory injunction ordering defendant to deliver to plaintiffs their proportionate share of old and new water to which they are entitled; to issue stock with voting rights on the new water to plaintiffs. In addition, plaintiffs have sought to have the assessments imposed for delivery of new water declared illegal and to be awarded damages for the failure of the defendant to deliver the new water to plaintiffs for the four years preceding the instigation of this action.

Defendant has delivered water to plaintiffs through lateral C. From the terminus of lateral C, plaintiffs have maintained a private ditch a distance in excess of one mile to divert the water to their property. The land of plaintiffs, which is designated in the applications for appropriation of new water, lies above lateral C. Lateral B is situated along a course that in elevation is above these lands, but B does not extend far enough to reach plaintiffs' lands. Lateral B terminates at a point south of a pond owned by one Lloyd Remund, and a ditch running easterly from this pond is also privately owned by him. In its present state lateral B has only sufficient carrying capacity to conduct the old water of the present shareholders of defendant. Prior to the 1977 irrigation season, plaintiffs lacked the physical facilities to use the new water on their bench lands. Plaintiffs then installed pumps which enabled them to pump the new water from lateral C to the bench lands.

One of plaintiffs' basic claims was that defendant had a duty to enlarge and extend lateral B so as to deliver the new water to plaintiffs' bench land to facilitate irrigation by gravity flow. On several occasions defendant had submitted to the shareholders of lateral B the question of whether they would be willing to pay to enlarge the ditch to carry the new water. The shareholders consistently declined to participate in such a project. The evidence indicated the cost of such an undertaking was disproportionate to the potential benefits which could be derived by the utilization of the new water by the other shareholders in lateral B. Defendant was willing to permit plaintiffs to enlarge lateral B on the conditions that they pay the expenses of the project, guarantee completion, and post a performance

---

1. The individual defendants were officers and directors of the company. Before the trial court plaintiffs sought punitive damages from the individual defendants on the ground they acted maliciously. No evidence was adduced to support this claim, which plaintiffs have not pursued on appeal. Therefore, reference in this opinion to defendant is limited to the company.

bond. In one area lateral B traverses through shale ledges, the other shareholders were concerned that by enlarging the ditch, the water might disappear into the ledges and be lost. Although plaintiffs claimed the ledges could be re–excavated, they refused to guarantee the result.

On lateral C there are 24 hour a day flowage rights. Defendant installs and repairs weirs which are set to divert the shareholder's portion to which he is entitled into his own ditches. Plaintiffs claimed that defendant had the duty to install measuring devices at each point there was a diversion to a shareholder to assure each received his proportionate share. Plaintiffs further claimed defendant should be compelled to employ a water master to police the apportionment of the water. The trial court refused to issue an order compelling these managerial decisions. Significantly, plaintiffs conceded that they had no knowledge of the amount of water they had received, and they claimed no damage to their crops caused by a deficiency of water with the exception of their claim concerning the new water, which will be discussed infra.

On appeal plaintiffs contend the trial court erred by failing to issue a mandatory injunction requiring defendant to deliver to plaintiffs their proportionate share of the old and new water.

The trial court ruled defendant had no duty to deliver any specific portion of water to plaintiffs at any time. The trial court further ruled on defendant's counterclaim that pursuant to its Articles of Incorporation, defendant might not be held liable to plaintiffs for any loss of water in its ditches due to ordinary wetting and seepage or to theft or misappropriation by others, or to any other cause in which defendant, acting through its Board of Directors did not directly participate. Defendant prevailed with its contention that it had fulfilled its duty to its shareholders by furnishing water to the laterals, and thereafter each shareholder was individually responsible to take only his proportionate share. This method was designated the "honor system."

The original articles of incorporation in 1905 required defendant "to control and regulate rights to the use of water so acquired and owned as aforesaid, and to equitable (sic) distribute the same to and among the stockholders according to the number of shares or capital stock held by each of them respectively."

In 1956, the articles of incorporation were extensively amended and the foregoing provision was deleted. The duty of the corporation was to "furnish" water "only" to its stockholders. The evidence indicated that by custom defendant had never undertaken to distribute the water proportionately to the shareholders and had operated exclusively on the honor system, viz., each would take only his entitlement.

Although it does not modify plaintiffs' claim for relief, the trial court erred in its ruling on defendant's counterclaim seeking declaratory relief as to its duty to its shareholders. The trial court absolved defendant of all liability to furnish water to its shareholders except for intentional participation in contributing to any loss thereof.

■ In a mutual ditch company, where each share of stock represents so much water, the delivery of such water to the shareholder is analogous to the payment of a cash dividend in corporations organized for profit.[2]

"  .  .  . And as each share of stock is equal to every other share, the owners thereof are entitled to such benefit therefrom, by way of water dividends, as the holding of each bears to the whole amount of stock of the corporation. It therefore follows that it is the duty of a mutual water corporation organized to furnish water exclusively to its stockholders to furnish such a proportion of water to each of its shareholders as the member of shares bear to the whole number of shares of the stock of the company. As was well said in a late California case (*Miller v. Imperial Water Co.*, No. 8, 156 Cal. 27, 103 P. 227 (1909)): 'In the case at

2. 3 Kinney on Irrigation and Water Rights (2nd Ed.), Sec. 1483, p. 2665.

bar the stockholder's rights to have water furnished on his land is not based on any special contract entered into by him with the corporation, but is an inseparable adjunct of his membership, and it is a plain duty resting on the corporation in the exercise of its corporate functions to furnish him such water.' And where such corporation fails to so furnish the proper proportion of water to one of its shareholders, it is liable for the damages resulting from such failure. . . ." [3]

In *Genola Town v. Santaquin City* [4] this Court stated:

" . . . Stock in a mutual company entails the right to demand such stockholder's aliquot share of the water in proportion as his stock holding bears to all the stock. Water rights are pooled in a mutual company for convenience of operation and more efficient distribution, and perhaps for more convenient transfer. But the stock certificate is not like the stock certificate in a company operated for profit. It is really a certificate showing an undivided part ownership in a certain water supply. It embraces the right to call for such undivided part according to the method of distribution. . . ."

█ █ The board of directors of a mutual water company, as a matter of law, owes the duty to distribute to each stockholder his proper proportion of the water available for distribution among the stockholders. [5] A mutual irrigation company has a duty to use reasonable care and diligence in maintaining its canal and keeping it supplied with water, and of regulating and dividing its use among the shareholders in accordance with their interests. The company is liable and must respond in damages to a shareholder injured by its neglect or failure to discharge such duty. [6]

█ Defendant's articles of incorporation do not insulate it from responding in damages to a shareholder for failure to furnish his proportionate share of the available water or to maintain the canals. However, defendant does not have the duty to extend its canal and thereafter maintain it to plaintiffs' property as they contend. There is neither a provision in the articles of incorporation nor has there been established by custom, a duty to deliver the water to the property of a shareholder. [7]

█ The determination of the trial court was erroneous insofar as it completely nullified defendant's duty to furnish plaintiffs water, as available, proportionately to their stock ownership. However, plaintiffs may not, through an injunctive proceeding, under the facts here, interfere with the management of the company and compel the board of directors to produce the result sought. In this case plaintiffs sought an order compelling the board to employ a water master and to install measuring devices at every point where a shareholder diverted water from the canal. Plaintiffs' position is particularly untenable, since they failed to establish by the evidence either a shortage of water or resulting damages from loss thereof. In *Yardley v. Long Canal Co.,* [8] the plaintiff, as those herein, did not seek damages for failure to deliver him his fair share of the water but rather sought an order compelling the company to install measuring devices and headgates at approximately 64 outlets. This Court stated:

" . . . Furthermore, to compel the company to expend money to install devices in other ditches where the stockholders may not deem them essential, might subject them to expense unnecessarily and nonbeneficially merely to please the plaintiff. In view of the circumstances of this case, the trial court

**3.** Id., Sec. 1486, p. 2672.

**4.** 96 Utah 88, 101 -102, 80 P.2d 930, 936 (1938).

**5.** *Baird v. Upper Canal Irrigation Co.,* 70 Utah 57, 69, 257 P. 1060 (1927).

**6.** *Burtenshaw v. Bountiful Irrigation Co.,* 90 Utah 196; 201, 61 P.2d 312 (1936).

**7.** *Duze v. South Elsinore Mutual Water Co.,* 83 Cal.2d 333, 188 P.2d 837 (1948).

**8.** 111 Utah 247, 250, 177 P.2d 530 (1947).

properly concluded that there was not a sufficient showing that plaintiff was deprived of his fair share of the water, and that the court should not attempt to dictate the policy of the board of directors in solving the problem which seems peculiar to the plaintiff. If the court could order the directors to act in accordance with the personal views of plaintiff, it could deprive the directors of the discretion conferred upon them by law."

■ Plaintiffs contend the trial court erred by its refusal to order the company to issue to plaintiffs stock with voting rights on the new water. Plaintiffs concede that such stock would be subject to cancellation if they failed to present proof of appropriation of the water. The trial court found that defendant had never issued stock in exchange for water rights, the appropriation of which had not been proved, and plaintiffs had not proved the appropriation of this new water. Defendant contends it would be inequitable to issue stock with the right to vote on permanent obligations, e. g., capital improvements, in respect to water rights which are presently terminable. Plaintiffs cite neither reason nor authority to reverse the trial court; their claim is without merit.

■ Plaintiffs urge the trial court erred by ruling they were not entitled to damages for the defendant's failure to deliver the new water for the four years preceding the plaintiffs' installation of the pumps. This point is merely a facet of the first issue, wherein plaintiffs claimed defendant had a duty to enlarge and extend lateral B so as to deliver the new water to plaintiffs' property at a point where they could irrigate by gravity flow. As soon as plaintiffs had the physical facilities to utilize the water, it was furnished to them through lateral C. Plaintiffs have established no legal basis to sustain their claim for damages.

Finally, plaintiffs contend the trial court erred in its ruling that the assessments on the new water were equitable and legal.

Since the plaintiffs do not have shares of stock on this new water and there is no other agreement as to the cost of using the canal, Section 73–1–9 is controlling.[9]

Section 73–1–9 provides:

"When two or more persons are associated in the use of any dam, canal, reservoir, ditch, lateral, flume or other means for conserving or conveying water for the irrigation of land or for other purposes, each of them shall be liable to the other for the reasonable expenses of maintaining, operating and controlling the same, in proportion to the share in the use or ownership of the water to which he was entitled."

■ The trial court found the amount of the assessment on the new water was derived by the Board of Directors soliciting estimates from the stockholders. The Board averaged these figures and thus set the amount of the assessment. Although the amount may in fact be appropriate, the method by which it was derived was not in accord with Section 73–1–9. There was no evidence as to the actual expenses of defendant in distributing the water.

In *Gunnison–Fayette Canal Company v. Roberts*,[10] this Court held that the ditch owner, under Section 73–1–9 has the burden of proving that all expenses for which it seeks contribution are reasonably related to the cost of distributing the user's water, for any expenses which do not affirmatively appear to be so related must be excluded. This Court deemed expenditures for certain corporate administrative functions and projections of future canal improvements sufficiently related to the distribution of the user's water to be properly included in the assessment. As to that aspect, this case must be reversed and remanded for a hearing to determine if the assessments for the new water, by plaintiffs, paid under the compulsion of a court order, represented an amount reasonably related to the cost of distributing the plaintiffs' water.

CROCKETT, C. J., and STEWART, J., concur.

9. *Gunnison-·Fayette Canal Company v. Roberts*, 12 Utah 2d 153, 157, 364 P.2d 103 (1961).

10. Id., at pp. 159–160, 364 P.2d 103.

HENRIOD, Retired Justice (concurring and dissenting):

Appellants' Brief, in addressing itself to Point II on appeal, concedes that the directors assessed a per capita $67 for maintenance and operation costs incident to the acquisition of "new" water, by "an averaging of the suggestions" of stockholders at a proper meeting. The appellants joined in and made some of the suggestions, but even so, considered it inequitable and not in conformity with the provisions of Title 73–1–9, Utah Code Annotated, 1953, having to do with shareholders being liable to each other for maintenance and operation based, not on an individual stockholder basis according to class of stock, but on a "share of stock" basis. It does not seem likely that the directors misinterpreted the "equitable" assessment based on the "suggestions" of the shareholders, but, in any event, the trial court thought not. Given the traditional respect we do to the trial court's conclusion in a debatable situation, together with the facts that the Articles of Incorporation in this case provided for an "equitable" assessment, and that Title 73–1–9, does not expressly prohibit stockholders by agreement to employ an alternative assessment formula, it would seem that the trial court legitimately could be affirmed here, without resort to a remand requiring the court to follow a statute that appears either not to apply in the case, or that reasonably can be interpreted as not being offensive to an alternative method of determining who must pay and in what proportion in the flexible area of corporate–stockholder control. I am of the opinion that the trial court also can be affirmed as to this aspect of the case, and that a remand for further proceedings could be eliminated.

HALL, Justice, concurs in the concurring and dissenting opinion of Retired Justice HENRIOD.

WILKINS, Justice, having disqualified himself, does not participate herein.