Lucius R. SWASEY, George L. Swasey
and John A. Swasey, Plaintiffs
and Appellants,

v.

ROCKY POINT DITCH COMPANY, a
corporation, et al., Defendants and
Respondents.

No. 17971.

Supreme Court of Utah.

March 1, 1983.

M. Dayle Jeffs, Provo, for plaintiffs and appellants.

M. Craig Smay, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

This is a second appeal of this case, having been remanded by this Court and reheard below on the issue of whether defendant company's assessment to plaintiffs for the costs of distribution of "new" water through defendant's irrigation ditches was reconcilable with the terms prescribed by U.C.A., 1953, § 73–1–9.[1] Inasmuch as the facts regarding the background of the case are undisputed, we adopt the statement of facts set forth in the first opinion by Justice Maughan:

Plaintiffs initiated this action to secure injunctive relief and damages against defendant, a mutual ditch company. Defendant counterclaimed, seeking a declaration of its obligation to plaintiffs under the company's Articles of Incorporation and the laws of this state. The matter was tried before the court and all issues were determined adversely to plaintiffs' claims. The judgment of the trial court is affirmed with the exception of the determination concerning the assessment for "new" water, which is remanded for further hearing in accordance with this opinion. All statutory references are to Utah Code Annotated, 1953, as amended. No costs are awarded.

---

1. U.C.A., 1953, § 73–1–9 provides:

When two or more persons are associated in the use of any dam, canal, reservoir, ditch, lateral, flume or other means for conserving or conveying water for the irrigation of land or for other purposes, each of them shall be liable to the other for the reasonable expenses of maintaining, operating and controlling the same, in proportion to the share in the use or ownership of the water to which he was entitled.

Plaintiffs are shareholders in defendant; the water rights represented by shares of stock are herein identified as "old" water. In addition, by court decree the State Engineer was ordered to grant certain water applications of defendant to appropriate certain high water rights in the Duchesne River on particular acreage in Duchesne County. Plaintiffs are the owners of some of this acreage upon which beneficial use of the water is to be made in accordance with the applications. Proof of this appropriation as required by § 73–3–16 has not been made and consequently no certificate has been issued by the State Engineer as provided in § 73–3–17. The water diverted under these applications is identified as "new" water.

Defendant operates three ditches in its system, which are identified as laterals "A," "B," and "C." Water is diverted from the Duchesne River into lateral A. B and C laterals are branches of A; B traverses the bench lands, and C proceeds along a course at lower elevations.[2]

Regarding the matter of the assessment for new water, for which the case was remanded for further hearing, this Court held as follows:

Finally, plaintiffs contend the trial court erred in its ruling that the assessments on the new water were equitable and legal. Since the plaintiffs do not have shares of stock on this new water and there is no other agreement as to the cost of using the canal, *§ 73–1–9 is controlling.*

The trial court found the amount of the assessment on the new water was derived by the Board of Directors soliciting estimates from the stockholders. The Board averaged these figures and thus set the amount of the assessment. *Although the amount may in fact be appropriate, the method by which it was derived was not in accord with § 73–1–9. There was no*

evidence as to the actual expenses of defendant in distributing the water.

In *Gunnison-Fayette Canal Company v. Roberts,*[3] this Court held that the ditch owner, under § 73–1–9 has the burden of proving that *all expenses for which it seeks contribution are reasonably related to the cost of distributing the user's water,* for any expenses which do not affirmatively appear to be so related must be excluded. This Court deemed expenditures for certain corporate administrative functions and projections of future canal improvements, sufficiently related to the distribution of the user's water to be properly included in the assessment. As to that aspect, this case must be reversed and remanded for a hearing to determine if the assessments for the new water, by plaintiffs, paid under the compulsion of a court order, *represented an amount reasonably related to the cost of distributing the plaintiffs' water.*[4] [Emphasis added.]

At the second trial of this issue, defendant proffered written as well as oral evidence of the reasonable relationship of assessments made on the new water users to the costs of distribution incurred by the company. Thereupon, the trial court affirmed, for the second time, the assessments made by defendant, and plaintiff appeals.

■ The fundamental question presented is whether the evidence presented by defendant on rehearing was sufficient to satisfy its burden on remand and justify the trial court's decision. In making this determination, we will adhere to the standard of review requiring that the evidence be viewed in a light most favorable to the prevailing party,[5] that the judgment of the trial court be afforded a presumption of correctness,[6] and that it be affirmed if sup-

2. *Swasey v. Rocky Point Ditch Co.,* Utah, 617 P.2d 375, 377 (1980).

3. 12 Utah 2d 153, 364 P.2d 103 (1961).

4. 617 P.2d at 380.

5. *Brugger v. Fonoli,* Utah, 645 P.2d 647 (1982); *Rodgers v. Hansen,* Utah, 580 P.2d 233 (1978).

6. *Burton v. Zions Cooperative Mercantile Institution,* 122 Utah 360, 249 P.2d 514 (1952).

ported by competent evidence.[7]

Defendant called five witnesses, all of whom had been either officers or directors of the company during the period at issue (1975 to 1980), to testify as to the reasonable relationship the assessments on new water users bore to the actual costs of distribution of their water. Each of these witnesses testified that substantial expenditures had been made by the company during this five-year period to enlarge and maintain the canal ditches in order to accommodate the new water.

In support of the witnesses' testimony, defendant submitted an itemized list of expenses (Exhibit 33) incurred by the defendant company during the subject period which were attributable to the enlargement work performed on laterals A and C (the ditches utilized for the distribution of all of the new water, including plaintiffs'). To establish the authenticity and accuracy of this list, defendant relied, primarily, upon the testimony of Kipp Merkley, who served as president of the defendant ditch company during most of this litigation and currently serves as vice-president, and who, along with Gail Hamilton (current president of the company) and George Marett (president at the time the enlargement was done), prepared the list of expenditures from the company's records. Mr. Merkley testified as to each entry in defendant's Exhibit 33, explaining what was done and how it was attributable to delivery of the new water. The contents of the list were also verified by each of defendant's remaining four witnesses.

Plaintiffs argued below that the expenditures itemized in Exhibit 33 were not representative of the actual costs of distributing the new water through the canal ditches.

Furthermore, they argued that the items listed in Exhibit 33 were not attributable, as alleged by defendant, to an enlargement of laterals A and C; rather, they were expenses incurred for purposes, such as routine cleaning and maintenance, completely unrelated to the distribution of new water.

To support this position, plaintiffs submitted their own version of expenditures attributable to new water distribution. Their lists, derived primarily from defendant's answers to interrogatories, consisted of an itemization of the defendant company's total expenses over the five-year period with deletions of those expenses which appeared to have no relation to the costs of handling and dispersing the new water (Exhibits 40–44). The particular items deleted from the lists were also submitted to the lower court as Exhibits 45 and 46.

The effect of plaintiffs' evidence, *supra,* was shown to be wholly inconsequential. Defendant showed, through the cross-examination of George Swasey, that none of the costs listed on plaintiffs' Exhibits 45 and 46 was, in fact, included on defendant's Exhibit 33.[8]

To disprove defendant's claim that the expenses itemized on Exhibit 33 were incurred as a result of an "enlargement" performed on laterals A and C to accommodate new water, plaintiffs submitted the minutes of company meetings held during the period of time in which the so-called "enlargement" allegedly occurred. To testify that the minutes did not make any reference to an enlargement, plaintiffs called upon Julia Abbott, a former secretary of the defendant company, who had kept the minute book and financial records during the same period. According to plaintiffs' analysis of the minutes, at least that portion submitted on

**7.** *Branch v. Western Factors, Inc.,* 28 Utah 2d 361, 502 P.2d 570 (1972).

**8.** The relevant portion of the defense's cross-examination of George Swasey is as follows:
Q. Mr. Swasey, for the purpose of clarity, I'm going to show you Defendant's Exhibit 33, and these are my copies of Plaintiff's Exhibits 45 and 46. Look at 45 and 46 for me, would you please? Those are the figures which for some reason you have deleted from

the overall list of expenditures of the Company submitted by the plaintiffs here?
A. That's right.
Q. Would you now put them next to Defendant's Exhibit 33 and tell me where any of the figures on Exhibit 45 or 46 appear on Exhibit 33?
A. Well, I can't see where any of them do.
Q. Thank you.

direct examination of Mrs. Abbott, the expenditures itemized on Exhibit 33 were associated with "cleaning" of the canal, rather than "enlargement" thereof. .

However, not submitted by plaintiffs in their examination of Mrs. Abbott regarding the minutes was an entry made during the same period of time and by the same record keeper, Mrs. Abbott, which unequivocally addresses the matter of "enlarging" the canal.[9] This particular entry pointed out by defendant on cross-examination of Mrs. Abbott clearly contradicts plaintiffs' analysis of the minutes, and, when viewed in a light most favorable to defendant and the trial court's judgment, supports the determination that an "enlargement" did, in fact, occur.

In addition to Mrs. Abbott's testimony concerning the company's minutes, plaintiffs called two other witnesses to testify that the expenses included on defendant's Exhibit 33 were not related to an "enlargement" of laterals A and C, and therefore not assessable to plaintiffs. George Swasey, one of the plaintiffs in this proceeding, testified that he had been on the defendant company's board of directors during 1975, 1976 and 1977, and that the work done on the canal ditches during that period was for "cleaning," not for enlargement to accommodate new water. In like manner, Edmund Bench, Jr., who had also served as an officer and member of the board of directors, testified that the Exhibit 33 expenses were not entirely representative of the costs of putting the new water in the ditches.

■ The trial court apparently considered the testimony of defendant's five

witnesses regarding the nature of the expenditures listed on Exhibit 33 to be more credible than that of plaintiffs' three witnesses. Inasmuch as the trial court has the duty and the prerogative to weigh such conflicting evidence and determine the credibility of the witnesses, we will not endeavor to substitute our judgment for the trial court's.[10] Furthermore, upon reviewing this evidence in a light most favorable to the prevailing party and the judgment of the trial court, *supra,* we find it to be clearly adequate and supportive of both defendant's argument and the judgment.

Plaintiffs further contend that the assessments were not levied in compliance with U.C.A., 1953, § 73–1–9, *supra,* inasmuch as they were based upon the proportion of the ditches used rather than upon the use or ownership of the water. This contention is without substance.

Only laterals A and C were improved to accommodate the flow of new water, all of which is conveyed through them. The water is first channeled into lateral A and then into lateral C to serve the other downstream users, including plaintiffs. Lateral B continued to serve only the users of old water. When defendant levied its assessments to cover the cost of conveying the new water, it appropriately did so on the basis of the use made of its ditches. All users of lateral A were assessed $44 per equivalent share and all users of lateral C were assessed an additional $23 per equivalent share. Of course, no assessment was levied against the users of lateral B, which conveyed only old water.

9. The following is an excerpt from the cross-examination of Julia Abbott:

Q. Let me show you page 70 and 71 of the Minute Book, lower part of the page 70 designates a meeting of March 11, 1975, does it not?
A. Yes, it is.
Q. Let me show you a paragraph of that in your handwriting here on the bottom of page 71 and ask if you'd read that, please.
A. The Ditch Company has the right to do something about—the Ditch Company needs to get a written agreement signed by those

getting new water saying they will pay for their share of *enlarging* the ditch. It was decided that the stockholders would meet at the ditch on Monday.
Q. It's unfortunate they didn't get the original agreement, but in fact there was indeed a decision by the Directors there at that date to enlarge the ditch for the purpose of getting in the new water?
A. That's what it says.
[Emphasis added.]

10. *Derry v. Farr,* Utah, 645 P.2d 649 (1982).

As supportive of their position, plaintiffs cite *Gunnison-Fayette Canal Company v. Roberts*,[11] wherein a nonstockholder user of the company ditch contended that he should be liable for contribution for only that portion of the canal which was used to convey his water, and contended that the lower court erred in holding them liable for contribution for the entire length of the canal when they used only some six miles of the fifteen-mile canal. This Court held:

> With this contention we cannot agree. Section 73–1–9, U.C.A. 1953, defines the basis upon which contribution is to be determined as " * * * in proportion to the share in the use or ownership of the water to which he is entitled." Nothing in the foregoing section limits the proportionate share to only that portion of the canal used to convey the water. The statute bases the right to contribution upon the *use or ownership of the water* and not upon the proportion of the canal used.[12] [Emphasis added.]

Plaintiffs contend that the method of assessment employed by the defendant company in the present case is the very method urged by the nonstockholder user in *Gunnison-Fayette, supra,* and therefore should be rejected by this Court.

Plaintiffs' reliance on the *Gunnison-Fayette* decision is misplaced. A sectionalized method of assessment, such as the nonstockholder user in *Gunnison-Fayette* sought, was not employed by defendant in this case. On the contrary, those who used *any part* of lateral A were assessed for new water improvements to the *entirety* of lateral A, and the same principle was applied to laterals B and C. Those who did not use any part of lateral C were not asked to pay any of the costs of improvements to it.

Defendant's method of assessment is based upon the valid proposition that improvements which benefit only certain users are not to be assessed against all other users not so benefited. This proposition is entirely consistent with the Court's holding in *Gunnison-Fayette* and also in the first appeal of this case, wherein we stated in pertinent part:

> In *Gunnison-Fayette Canal Company v. Roberts* [cite omitted], this Court held that the ditch owner, under Section 73–1–9 has the burden of proving that all expenses for which it seeks contribution *are reasonably related to the cost of distributing the user's water,* for any expenses which do not affirmatively appear to be so related *must be excluded. . . .* [T]his case must be reversed and remanded for a hearing to determine if the assessments . . . represented an amount *reasonably related to the cost of distributing the plaintiffs' water.*[13] [Emphasis added.]

In light of the foregoing, we hold that the evidence produced by defendant at the second trial was competent and sufficient to meet its burden of establishing a reasonable relation between the assessments made to plaintiffs and the costs of distributing their new water.

We have duly considered the remaining issues raised by plaintiffs on appeal, and deem them to be without merit. The judgment of the trial court is affirmed. Costs to defendant.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

**11.** 12 Utah 2d 153, 364 P.2d 103 (1961).

**12.** *Id.* at 106.

**13.** *Supra* n. 4.