BIG COTTONWOOD TANNER DITCH CO. v. KAY et al.

No. 6759.   Decided April 6, 1945.   (157 P. 2d 795.)

See 4, C. J. S., Appeal and Error, sec. 54; 2 Am. Jur., 877.

*Grant H. Bagley,* of Salt Lake City, for appellant.

*Moyle, Richards, McKay & White,* of Salt Lake City, for respondent.

TURNER, Justice.

This is an appeal from a judgment of the District Court of Salt Lake County in favor of the plaintiff and respondent Big Cottonwood Tanner Ditch Company. The respondent hereinafter will be referred to as the Company. The original action was commenced by the Company against Robert Kay, the appellant and four others to recover the sum of $80.45 as the reasonable value of a water meter and the cost of its installation. By a supplemental complaint, the Company asked for judgment for $94.01 for water withdrawn by Kay and the others from the Company's lines in excess of that to which the respondent and the others were entitled. Judgment was entered in the City

Court of Salt Lake City in favor of the Company as prayed for against the defendant Kay, and the action was dismissed as to the other four defendants.

From the judgment of the City Court the defendant appealed and the Company cross-appealed to the District Court of Salt Lake County, where the case was tried de novo to the court, sitting without a jury. Prior to the commencement of the trial, the Company by leave of court filed an amended complaint. Without filing a new answer, the allegations of the amended complaint were deemed to be generally and specifically denied.

The amended complaint contained three alleged causes of action, the first and second of which sought recovery for the cost of a water meter and the expense of its installation, and the third for the value of excess water used by the defendant.

In the first cause of action it is alleged that pursuant to a resolution of the stockholders, unanimously adopted at an annual meeting, the board of directors ordered the metering of all stockholders' connections to the culinary water system of the company, which water system was installed and maintained by Salt Lake City under contract, and that the order of the directors was that the cost of metering and installation thereof was to be borne by the individual stockholders receiving and requesting the delivery of culinary water from the Company's system.

It is further alleged that all of the meters had been installed and the cost thereof borne by the individual stockholders, except that of the defendant. That after the defendant had requested the continued delivery of culinary water from the Company's system, and at his special instance and request, a meter was installed by the Company upon the culinary connection from the Company's pipe line to the pipe line owned by defendant Kay, formerly owned by his father, George Kay. That the meter was installed by virtue of the stock ownership of the defendant Kay and that he agreed to pay for the meter and its installa-

tion. The cost of the meter was alleged to be $70 and the cost of installation, $10.45.

Oscar Bergreen, Alden Kay, Thomas Wilson and Wilford Crites, were named parties defendant to the action and to connect them with the first cause of action it was alleged that they were so named as defendants because the defendant Kay had represented to the Company that these co-defendants were obligated to him to pay a portion of the cost of the meter and installation.

The second cause of action is in quantum meruit and alleges that the meter was reasonably worth the sum of $70 and the installation was reasonably worth the sum of $10.45.

In the third cause of action it is alleged that between the 22nd day of April, 1943 and the 24th day of September, 1943, the defendants withdrew from the Company's culinary water system, through the meter which the Company had installed, 1,009,875 gallons of water in excess of the water to which they were entitled, and that by reason thereof the defendants were indebted to the Company in the sum of $100.98.

After the hearing of the cause, the court found the issues in favor of the plaintiff and against the defendant Robert Kay. The action was dismissed as to the four other defendants. Findings of fact, conclusions of law and judgment were signed and filed March 28, 1944. The present appeal is from this judgment.

The Company by its cross-appeal contends that this court is without jurisdiction in view of 20-4-18, ▬▬ U. C. A. 1943, which provides that,

"when the amount in controversy does not exceed $100, exclusive of costs, the judgment of the district court shall be final."

Where the judgment sought in the one action is for more than $100, that is all that is required. In *Thomas* v. *District Court of Box Elder County*, 66 Utah 300, 242 P. 348, 350, it was held

"that by the amount in controversy is meant the amount claimed by the plaintiff in the action in his complaint."

Thus, in this case, the amount "claimed" by the plaintiff in its complaint in the City Court was $174.46. This disposes of the question raised by the respondent Company.

Appellant sets out ten assignments of error. They may be summarized as follows: (1) That the trial court erred in making and entering its conclusions of law and judgment on the ground they are not supported by the findings of fact and that the judgment is contrary to law and not supported by the evidence; (2) that the findings are contrary to and not supported by the evidence; (3) that the court erred in admitting in evidence the minutes of certain meetings of the stockholders and board of directors of the Company; and (4) in permitting respondent Company's counsel to testify in narrative form. It is apparent that the case involves one primary issue. However, the minor matters raised under the headings (3) and (4) as heretofore set out should also be disposed of.

The paramount issue is, can this mutual water company, under its articles of incorporation, require and compel the individual stockholders to install water meters or pay the Company for the cost of same and installation charges, and having installed meters, can the Company compel payment by a stockholder for water used by him in excess of the amount to which his stock ownership entitles him?

In search for the answer, we shall examine the articles of incorporation of the Company, the contract with Salt Lake City, and the record relative to the actions of the stockholders and directors; also the practices and customs of the Company. The Company was incorporated as a mutual water company in Salt Lake County in 1904. By its articles of incorporation, the object, pursuit and business are declared to be

"to own, acquire, control, manage, maintain, and keep in repair, reservoirs, water ditches, canals, dams, flumes, weirs, headgates, waterpipes, and other conduits and appurtenances necessary for a proper and systematic diversion and utilization of the due proportion of the waters of Big Cottonwood Creek and its tributaries that now belong or may hereafter belong to the incorporators and stock-

holders of this corporation, to use said water for the irrigation of lands, for domestic, culinary, and mechanical purposes; to develop springs, and to acquire, own, use, control, sell, or dispose of all necessary real estate or other property necessary for the conservation, distribution, and use of said water."

In 1920, the Company entered into an agreement with Salt Lake City, a municipal corporation, for the exchange of certain irrigation water for a portion of the Company's water from Big Cottonwood Creek for use by the city in furnishing its inhabitants with culinary water. By the terms of the contract the city agreed to and did construct a system of pipe lines for the purpose of distributing the reserved portion of the culinary water to the Company's stockholders. The contract also provides that

"if the Company shall find it necessary to use through said pipe line or system any water in excess of the quantity herein reserved, and if at such time the city has any water in excess of its municipal needs, the city agrees to furnish to the Company such quantity of water at the regular Salt Lake City water rates at the time of use."

This provision of the contract bears an important relationship to the respondent Company's third cause of action for excess water used by appellant Kay.

Under the terms of the agreement each share of stock of the Company entitles the owner to 900 gallons of water a day from April 1st to October 1st of each year, and to 500 gallons a day from October 1st to April 1st. The agreement specifically sets forth the territory to be serviced under it and states the general nature of the mains to be installed, the kind of connections, and specifies that the city will not extend mains beyond the fixed territory of the district, but provides that a stockholder may take the water beyond the fixed territory but must install the pipe line beyond the limits and install a cut-off at the territory boundary.

The articles of incorporation provide that a majority of the board of directors of the Company shall constitute a quorum and are authorized to transact the business and

exercise the corporate powers of the Company. It is also provided that the capital stock of the corporation is and shall be liable for the debts and expenses of the corporation.

Counsel for appellant contends that the court erred in admitting minutes of meetings of stockholders and directors, for under the Company's charter they could take no action to impose an obligation upon an individual stockholder except by stock assessment as provided by the Company's articles of incorporation.

If this Company had been incorporated as some mutual irrigation companies are, with one purpose only set forth in the articles. of incorporation, to wit: the distribution of irrigation water from a definite source of supply, we would be compelled to admit that there is merit in appellant's contentions.

The section benefited by the waters of Big Cottonwood Creek, and included under the articles of incorporation of this Company, is situated a short distance south and east of Salt Lake City. From the articles it is quite evident that the original incorporators and those responsible for the drafting of the articles of agreement were cognizant of the proximity of this district to Salt Lake City. It is apparent that they sensed the need of including the ownership and control of culinary water from Big Cottonwood Creek as well as waters to be used for irrigation. The purpose clause of the articles is exceptionally broad and indicates foresight and vision of the incorporators.

Approximately sixteen years after the Company's organization, it entered into that all-important contract with Salt Lake City which has been mentioned and discussed.

The contract is in evidence. It was made for the mutual advantage of. the parties. By this means, the water users in harmony with the times, placed themselves in a position to obtain clear canyon water from Big Cottonwood Creek through proper mains and under pressure to avoid the inconvenience and danger of obtaining culinary water from open streams, ditches or surface wells. As far as the record

shows no one has ever contended that the Company could not legally enter into this contract with Salt Lake City.

As the users of culinary water increased in numbers, it became quite apparent that some method would have to be employed to regulate the owners' use of culinary water. This problem was from time to time discussed by the stockholders and directors of the Company. The first meter was installed in 1937; then others were put to use. Finally, by action of the directors of the Company, all users were advised by letter of the board's actions requiring installation of meters.

Prior to the commencement of the original action involved in this case, all stockholders of the Company had either installed meters or paid for the installations made by the Company, with the exception of the defendant Kay, who refused to pay for the installation made by the Company at the property line where defendant's line commenced and went to homes beyond the territory of the Company. The defendant was the owner of another tract of land with a water right of 14½ shares, on which he installed a meter for this use and paid for the same.

We are of the opinion that a mutual water corporation, with articles of incorporation broad enough to include a right to have a system of distribution of its culinary waters, certainly is empowered to handle the system in accordance with prevailing custom and, if in its management the stockholders are treated fairly and equitably and their water rights, under such system, are neither damaged nor impaired, there is no justification for complaint.

From the record it appears that the conclusions of the trial court were well founded. The equitable distribution of culinary water required a system of control. To provide a means of curtailment of excessive use by some, to be fair and just with other stockholders, made action mandatory. The best means of regulating the use of culinary water is by meter.

Under the purpose clause of the Company's charter, and in view of the system of distribution used by the Company, we hold the installation of water meters justifiable and proper and sustain the trial court in its findings and conclusions. The only fair and equitable means of providing for meters under this system was for the users to pay for that which their individual use required. The proposed plan of assessment according to shares of stock would have been unreasonable and unjust, for many of the larger stockholders were satisfied with a use far less than they were entitled to by their stock ownership.

A company with culinary water rights, which has its water distributed by a proper system of mains, can employ practical and modern means and methods to insure just and equitable distribution of the water. To require an individual stockholder to pay for excess water at the cost to the Company is just and necessary to avoid imposing a debt upon the Company. Instead of complaining, the user of excess water should rejoice that the Company has made it possible for him to obtain the extra water at the rate paid by the Company and inhabitants of an adjoining metropolis.

We have held that the Company, by actions of its board of directors, can compel installation or payment for water meters by its stockholders. Therefore, the objections of appellant regarding the introduction in evidence of minutes of meetings and his contentions of insufficiency of the evidence and findings are without merit.

On or about March 28th, 1940, a master meter was installed by the Company at the intake of the Kay line from the Company's main. Demand was made upon appellant for the payment of the cost of the meter and its installation in the sum of $80.45, but he declined to pay therefor, stating that the other users on the line mentioned were jointly liable with him. According to the record, the stock entitling the use of water on the Kay line at the time the master meter (the one in controversy) was installed was in the name of the defendant, appellant

herein. This being the case, and the connections of the other users being beyond the district lines, the obligation for the installation was that of the defendant solely.

With reference to the third cause of action, the record shows that a meter reading for the period from April 22, 1943, to September 24, 1943, showed that appellant Kay had withdrawn 1,009,875 gallons of culinary water from the Company's main in excess of the amount he was entitled to by virtue of his stock ownership and that the cost of the excess water to the Company and the reasonable value thereof was 10 cents per one thousand gallons.

Appellant contends that error was committed in the court's finding that the meter was installed at his special instance and request. The installations were made for all as the result of appropriate corporate action at stockholders' and directors' meetings and appellant, as well as the other stockholders, was bound by such action. Where a legal liability is shown to exist, the law creates a promise upon which an action of assumpsit will lie. *Big Creek Ditch Co.* v. *Hulick,* 130 Or. 401, 280 P. 492.

The last assignment of appellant that we list is directed to the testimony of Henry D. Moyle. As attorney for and president of the Company he was sworn and testified in narrative form, there being no associate counsel. Appellant objected to this as not being in question and answer form and that it deprived him of the opportunity to make timely and proper exceptions and of the right to cross-examine the witness. The case was tried to the court without a jury and it will be presumed that the trial judge considered only that testimony of the witness which was material, competent and relevant. Appellant cross-examined the witness at length. We find no merit in this argument.

Finding no error in the record prejudicial to appellant, the judgment of the lower court is affirmed. Costs to respondent.

McDONOUGH and WADE, JJ., concur.

LARSON, C. J., concurs in affirming the judgment.

WOLFE, Justice (concurring).

I concur. In the light of the purpose for which the owners of rights to water from Big Cottonwood Creek and its tributaries pooled their holdings in and through the mechanism of a corporation, we must imply that the power

"to own, acquire * * * water pipes and other conduits and appurtenances necessary for a proper and systematic * * * utilization of the due proportion of the waters of Big Cottonwood Creek and its tributaries that * * * belong to the incorporators and stockholders [of the corporation] * * * for domestic, culinary * * * purposes"

implies a power to distribute the culinary water received from the city and which really originally belonged to the incorporators, to the stockholders of the corporation. Furthermore, incidental to such power to distribute and to measure the aliquot share of each stockholder. I agree that where the method of assessing the costs of such equipment is fair and equitable it will be upheld by the courts as being within the power of the corporation. To assess to each stockholder-user the cost of the meter which was to measure the amount of water which he consumed and the cost of its installation would seem fair and equitable even though a large stockholder who used much more water than a small stockholder might pay proportionately less than the latter. Where each stockholder-user is required to pay the cost of that equipment which is necessary to measure the quantity of water distributed to him alone, it would seem an equitable method of assessing costs. However, I would not want it thought that in this opinion we meant to decide that if the company had installed meters for its users that it might not have used the method of assessing the total cost against each stockholder in proportion to his stock holdings. We have not that question before

us. If it had been done in that fashion and some stockholders had protested we would then have had to decide whether such method was within the powers of the corporation as being reasonably impliable.

As to the charge for excess water, since the mutual company only charged to recoup itself for what it paid the city and made no profit it was acting as a distributing agency and not as a water company for profit. Hence, I think the opinion correct in that regard.

I think what has been denominated as the first two causes of action should more accurately be designated as two counts of one cause of action. I do not think it important in this case to decide whether the right of the company to recover the costs of purchasing and installing a meter rests on the theory of implied contract based on "special instance or request" or on a promise implied because of the exercise of a power granted the company by the incorporators and their successors in interest or because of a promise implied in law. While I think I know what the writer of the opinion had in mind, I think his statement that "where a legal liability is shown to exist, the law creates a promise upon which an action of assumpsit will lie" is too broad because it seemingly would embrace a tort liability. With the above observations, I concur.