466 P.2d 371

**HOLLIDAY WATER COMPANY, a corporation, Plaintiff and Appellant,**

v.

**Sid LAMBOURNE, County Treasurer of Salt Lake County, and Salt Lake County, Defendants and Respondents.**

No. 11501.

Supreme Court of Utah.

March 2, 1970.

---

Paul B. Cannon, of Cannon, Greene, Nebeker & Horsley, Salt Lake City, for appellant.

Gordon B. Christensen, County Atty., Donald Sawaya, Asst. County Atty., Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiff, a mutual water company, initiated this action to recover tangible property taxes paid under protest for the years 1963 through 1967. The taxes, assessed by Salt Lake County, were on three parcels of land and the improvements situated thereon. On two of the tracts were located water pumping plants; the third tract was unimproved. Plaintiff is a corporation, organized to distribute culinary

water exclusively to its shareholders. The trial court granted judgment to defendants on the ground that the taxes were lawful and properly imposed; plaintiff appeals therefrom.

In July of 1901, the Upper Canal Irrigation Company was incorporated for the purpose of appropriating, acquiring, owning, holding, leasing, and disposing of water "for irrigation and other purposes." In August of 1921, the Upper Canal entered into a written contract conveying its right to the water in Big Cottonwood Creek to Salt Lake City, reserving certain specified amounts of water for the use of the company for culinary, domestic and other purposes. All of the water so excepted and reserved was to be delivered and distributed in a pipeline to be constructed by the city along certain routes. In addition, the city also agreed to deliver, along the course of the company's canal, water suitable for irrigation. Plaintiff, Holliday Water Company, was incorporated in March of 1928, to own, hold, and distribute to its shareholders that portion of the water of Big Cottonwood Creek to which the Upper Canal was entitled and used through the pipeline system constructed by Salt Lake City. The transfer to plaintiff did not include any of the rights of the Upper Canal to the irrigation water which the city had agreed to deliver.

Since 1931, the plaintiff has distributed water solely to its shareholders through pipelines; its purpose is to furnish culinary water. Plaintiff's property was never assessed and taxed prior to 1963, but that year and thereafter the three tracts of land and the improvements thereon have been. The water rights and pipelines of plaintiff have never been so assessed or taxed by the county.

Plaintiff contends that the separate taxation of plaintiff's property violates Section 2, Article XIII, of the Constitution of Utah, which provides:

> All tangible property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. * * * Water rights, ditches, canals, reservoirs, power plants, pumping plants, transmission lines, pipes and flumes *owned and used by individuals or corporations for irrigating lands* within the state owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed as long as they shall be owned and used *exclusively for such* purposes. * * * [Emphasis added.]

Plaintiff asserts that the trial court erred by restricting the meaning of the words "irrigating lands" to the agricultural sense and that a proper interpretation would include the artificial diversion of water for any useful purpose.

The trial court, in a memorandum decision, reasoned that the constitutional provision excluding separate taxation was strictly limited to property used exclusively for irrigating lands and that the term "irrigation" in this arid land of Utah cannot be construed in the broad sense advocated by plaintiff. The court cited 30 Am. Jur. 350, Sec. 2,[1] wherein "irrigation" is defined as the artificial watering of agricultural land in regions where the rainfall is insufficient for crops; the ordinary and popular conception denotes the application of water to land for the production of crops and embraces all artificial watering of land. The trial court properly concluded that one could not in good conscience concede that the terms "for irrigating lands" and "used exclusively for such purposes" as used in the Constitution could be construed beyond the aforementioned definitions. This interpretation appears consonant with the construction of Section 2, which establishes in mandatory terms that all tangible property shall be taxable, unless it be within the ambit of a specific exception.

Plaintiff further contends that as a matter of practical construction the county assessors since statehood have so interpreted Section 2 that water rights, pipelines, and pumping plants, owned by mutual water companies, regardless of use, have not been taxed. The trial court found the only evidence of such "practical construction" was the failure to assess.

In Olson Construction Company v. State Tax Commission,[2] this court stated:

> * * * an administrative interpretation out of harmony and contrary to the express provisions of a statute cannot be given weight and, to do so, would in effect amend that statute.

We approve of the analysis of the trial court that the important fact was not the official failure to assess the tax, but whether the property taxed was part of a water system used exclusively for irrigating lands owned by parties owning such water system. If it were not so used, the property was subject to separate taxation, and the failure to tax cannot broaden the limited directive of the constitutional provision in question.

Plaintiff further asserts that the assessment and taxation of the properties constituted "double taxation" in violation of Sections 2 and 3 of Article XIII of the Constitution of Utah.

In McCormick & Co. v. Bassett,[3] this court stated:

> These provisions [Sections 2 and 3, Article XIII] of the Constitution in plain and explicit terms provide that there shall

1. Also see 45 Am.Jur.2d, Irrigation, Sec. 1, p. 945.

2. 12 Utah 2d 42, 45, 361 P.2d 1112 (1961).
3. 49 Utah 444, 448, 164 P. 852 (1917).

be a uniform rate of taxation in this state so that every person, company, and corporation will be compelled to bear, as nearly as may be, his, her, or its pro rata of the burdens of general taxation according to the value of the taxable property of such person or corporation. And it is not contemplated that, when property is once assessed for general taxes according to its value and at the same rate as other property subject to the same tax is assessed, it may again be taxed in some other way when the burden of both taxes falls on the same person, and while other property subject to the same tax is assessed but once. * * *

Plaintiff reasons that the water rights of the individual shareholder enhance the value of his land, and his land is thus assessed and taxed at a higher value; therefore, when the county taxes the facilities of a mutual water company, this constitutes double taxation.

The trial court readily acknowledged that this concept was applicable to agricultural lands in this arid region, where land has but nominal value until it is made productive by means of irrigation.[4] In such an instance it may be persuasively argued that the value of the irrigation system is fully represented in the enhanced value of the land irrigated; and if they be fully assessed, the public revenues are not affected by the exemption of the canal system. The trial court rejected plaintiff's argument that this concept extended to a culinary water system, reasoning that although a house is not suitable in the absence of any source of water, "still the value of a residential property is not increased from a nominal value to the full value of a residence by the fact that water is available to that house."

The court substantiated its reasoning by citing the fact that the framers of the Constitution did not provide that culinary water rights and the system used to distribute them were not to be separately taxed when such water goes to the parties owning such rights and system.

The court further observed that there was no evidence that the assessor, in appraising the residences of the shareholders, added to the valuation of the property the shareholders' pro rata share of the assessed valuation of the water system. The trial court concluded that plaintiff had failed to sustain its burden in proving that double taxation existed.

Finally, plaintiff asserts that the tax must be directly assessed against the beneficial interest of the individual shareholders because a mutual water company holds merely

4. See Stevens v. Melville, 52 Utah 524, 175 P. 602 (1918).

naked legal title to the properties in trust for its shareholders.

The trial court properly rejected this assertion, observing that this type of corporate structure does not mean that if the properies be subject to separate taxation, such taxes must be prorated and assessed against the individual shareholders. The court stated that common sense suggests otherwise. The highest tax assessed in the instant case was $928.99 for the year 1967; there are 2,660 shareholders; the pro rata share of the assessment would average 35¢ per shareholder.

The trial court correctly concluded that the interest of the shareholders were in no way prejudiced by an assessment of the corporate entity which had legal title to the property taxed and which assessed its shareholders for costs paid by the corporation in any event.[5]

The judgment of the trial court is affirmed; costs are awarded to defendants.

CROCKETT, C. J., and HENRIOD, TUCKETT, and ELLETT, JJ., concur.

5. See Big Cottonwood Tanner Ditch Co. v. Kay, 108 Utah 110, 118, 157 P.2d 795 (1945), wherein this court stated that a mutual water corporation, with articles of incorporation broad enough to include a right to have a system of distribution of its culinary waters, certainly is empowered to handle the system in accordance with prevailing customs and, if in its management the stockholders are treated fairly and equitably and their water rights, under such system, are neither damaged nor impaired, there is no justification for complaint.