2010 UT 45

**SALT LAKE COUNTY, a political subdivision of the State of Utah, Plaintiff and Appellee,**

v.

**HOLLIDAY WATER COMPANY, a Utah corporation, Defendant and Appellant.**

**No. 20080522.**

Supreme Court of Utah.

June 11, 2010.

ing
Lohra L. Miller, T.J. Tsakalos, Craig W. Anderson, Salt Lake City, for plaintiff.

Wallace T. Boyack, Paul H. Ashton, Salt Lake City, for defendant.

1. Fluorine is defined as "[a] pale-yellow, highly corrosive, poisonous, gaseous halogen element, the most electronegative and most reactive of all the elements, used in a wide variety of industrially important compounds." The American Heritage Dictionary 516–17 (2d ed. 1985). Concluding the Utah State Legislature would not contemplate adding a toxic substance to public water supply, even if by popular opinion, we assume the word "fluorine" in the statute should actually be the word "fluoride," a beneficial compound often added to a water supply to prevent tooth decay. As such, we use the term "fluoride" instead of "fluorine" throughout this opinion.

NEHRING, Justice:

## INTRODUCTION

¶ 1 Holliday Water Company appeals the district court's grant of summary judgment in favor of Salt Lake County, which requires Holliday Water to fluoridate its water supply in compliance with Salt Lake Valley Health Department's Regulation 33 (as amended).

¶ 2 While these proceedings were pending, the Utah State Legislature passed Senate Bill 29, amending Utah Code section 19–4–111 to exempt "corporate public water systems" from having to comply with Regulation 33. Holliday Water, contending it is a corporate public water system as defined by the new statute, filed a Notice of Suggestion of Mootness, arguing that the 2009 amendments moot this appeal.

¶ 3 Because we find that the 2009 amendments to section 19–4–111 moot this case, we vacate the decision of the district court and remand with instructions to dismiss the complaint as moot. However, we also hold that to the extent Salt Lake County and Holliday Water entered an enforceable contract before the 2009 amendments took effect, the 2009 amendments will not apply retroactively to displace the terms of that contract.

## BACKGROUND

¶ 4 The Utah Safe Drinking Water Act, originally passed in 1953, prohibits the addition or removal of fluorine[1] to "public water supplies, whether state, county, municipal, or district," unless a majority of voters in the affected area vote in favor of such an action in an election. *See* Utah Code Ann. § 19–4–111(2)(a) (Supp.2009).

¶ 5 In November 2000, Salt Lake County held a general election that included a ballot question regarding whether fluoride should be added to public water systems in Salt Lake County. A majority of registered vot-

ers approved the ballot initiative, thus requiring the addition of fluoride to the public water systems in Salt Lake County. After the vote, the Salt Lake Valley Health Department drafted Regulation 33, which mandated fluoridation of all "regulated public water systems" in Salt Lake County by October 1, 2003. The Salt Lake Valley Board of Health subsequently amended Regulation 33 in 2005 to exempt "functionally separate" water systems from the fluoridation requirement.

¶ 6 Holliday Water Company, a registered Utah corporation in Salt Lake County, declared itself to be a functionally separate water system and exempt from Regulation 33, as amended. In response, Salt Lake County filed a complaint against Holliday Water seeking a declaratory judgment ruling that due to its interconnections with Salt Lake City, Holliday Water is not a functionally separate water system and is required to comply with Regulation 33.

¶ 7 Holliday Water filed an answer and counterclaim, seeking a declaration that it is a functionally separate water system under the amended regulation. Salt Lake County moved for summary judgment. At the same time, Holliday Water filed a Motion for Declaratory Judgment asserting Utah Code section 19–4–111 and Regulation 33 do not apply to it.

¶ 8 In a memorandum decision, the district court granted Salt Lake County's motion for summary judgment and denied Holliday Water's motions. The district court found that under the plain language of the statute, along with Regulation 33, Holliday Water is not functionally separate because it is a public system that has interconnections with Salt Lake City, it is not independent of any other water system, and it provides water service to retail customers.

¶ 9 Holliday Water appealed the district court's grant of summary judgment in favor of Salt Lake County and the denial of Holliday Water's Motion for Declaratory Judgment on the application of Utah Code section 19–4–111.

¶ 10 While these proceedings were pending before our court and in response to the lobbying efforts of Holliday Water, the Utah State Legislature passed Senate Bill 29, amending section 19–4–111 of the Safe Drinking Water Act to expressly exempt from compulsory fluoridation those "corporate public water systems" whose shareholders oppose adding the chemical. Safe Drinking Water Act Amendments, ch. 371 § 1, 2009 Utah Laws 2029–30. Under the amended statute, a corporate public water system is defined as "a public water system that is owned by a corporation engaged in distributing water only to its shareholders." Utah Code Ann. § 19–4–111(1)(a).

¶ 11 In response to the new legislation and pursuant to rule 37 of the Utah Rules of Appellate Procedure, Holliday Water filed a Notice of Suggestion of Mootness, arguing that because it is a corporate public water system as defined in the new version of the statute, Salt Lake County has no authority to compel Holliday Water to fluoridate its water supply.

¶ 12 Salt Lake County filed a response to Holliday Water's Notice of Suggestion of Mootness arguing, among other things, that Senate Bill 29 is not retroactive and does not apply to this case.

¶ 13 We called for supplemental briefing on the mootness issue. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2009).

## STANDARD OF REVIEW

¶ 14 We review a summary judgment determination "for correctness, granting no deference to the [district] court's legal conclusions." *Hansen v. Am. Online, Inc.*, 2004 UT 62, ¶ 6, 96 P.3d 950. "[W]e determine only whether the [district] court erred in applying the governing law and whether the [district] court correctly held that there were no disputed issues of material fact." *Kouris v. Utah Highway Patrol*, 2003 UT 19, ¶ 5, 70 P.3d 72.

¶ 15 "An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *State v. Laycock*, 2009

UT 53, ¶ 12, 214 P.3d 104 (internal quotation marks omitted).

## ANALYSIS

¶ 16 Although the parties characterize their arguments in several ways, this appeal concerns one central question: Is Holliday Water required to add fluoride to its water supply? To answer this question, we must resolve three subsidiary issues: (1) Does Senate Bill 29, which amended Utah Code section 19–4–111 to exempt "corporate public water systems" from the fluoridation requirement, apply to this appeal? (2) If Senate Bill 29 does apply, is Holliday Water a "corporate public water system" as defined by the amended statute, and thus statutorily exempt from the fluoridation requirement? [2] (3) If Holliday Water qualifies for the "corporate public water system" exemption, could Holliday Water still be required to fluoridate its water supply under the terms of a contract entered into before the amendments were passed?

¶ 17 We conclude that Senate Bill 29 applies to this appeal and Holliday Water meets the definition of a "corporate public water system" under Utah Code section 19–4–111, as amended. Although this means Holliday Water has no statutory obligation to fluoridate its water supply, we also hold that to the extent Holliday Water entered into an enforceable contract with Salt Lake County before the statute was amended, Holliday Water may still be bound to comply with that contract's terms.

## I. SENATE BILL 29 APPLIES TO THIS APPEAL

¶ 18 A "[t]hreshold question[ ] in any case on appeal [is] whether there is an actual controversy." *State v. Lane*, 2009 UT 35, ¶ 15, 212 P.3d 529. Thus, the first question we must answer is whether Senate Bill 29, which amended Utah Code section 19–4–

111 to add an exemption for corporate public water systems, applies to this appeal.[3]

¶ 19 Largely as a result of Holliday Water's lobbying efforts, Utah Code section 19–4–111 was amended in the 2009 Utah State Legislative session. *See* Safe Drinking Water Act Amendments, ch. 371 § 1, 2009 Utah Laws 2029–30. Holliday Water contends that the new amendments to Utah Code section 19–4–111 apply to this appeal and moot the controversy between the parties.

¶ 20 Salt Lake County disagrees, arguing the amended section 19–4–111 does not moot this appeal because it does not apply retroactively to obligations that existed before the legislative amendments were passed. Thus, according to Salt Lake County, the prior version of the statute applies, and under that language, a controversy still remains.

¶ 21 We agree with Holliday Water on this point. "The burden of persuading the court that an issue is moot 'lies with the party asserting mootness.'" *See Cedar Mountain Envtl. Inc. v. Tooele County*, 2009 UT 48, ¶ 26, 214 P.3d 95 (Durrant, J., dissenting) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). "[M]ootness can be determined by facts that change or develop as the suit is pending." *Id.* Indeed, "[l]egislation can often moot a civil case, even where the legislation passes after the events have transpired in the case." *Salt Lake City v. Tax Comm'n*, 813 P.2d 1174, 1177 (Utah 1991); *see also Berning v. A.G. Edwards & Sons, Inc.*, 990 F.2d 272, 277 (7th Cir.1993) (citing *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)) (recognizing the Supreme Court's long-standing recognition of the principle that Congress may impose new legal rules to pending cases).

¶ 22 We find that Holliday Water has met its burden to demonstrate mootness. Although Salt Lake County is correct that the 2009 amendments to Utah Code section 19–

---

**2.** Because we determine Senate Bill 29 does apply to this appeal, we decline to address the argument that Holliday Water meets the definition of a functionally separate water system under the 2005 version of the statute.

**3.** Because Senate Bill 29 is now codified at Utah Code Ann. § 19–4–111 (Supp.2009), we refer to its statutory citation throughout the remainder of this opinion.

4–111 do not apply retroactively and thus cannot alter contractual rights that existed before their enactment (*see infra* Part III), Utah Code section 19–4–111 is the current law, and it prospectively governs the obligations of water companies to add fluoride to their water supplies. The 2009 amended version of this section provides:

> 19–4–111 Fluori[d]e added to or removed from water—Election or shareholder vote required
>
> . . .
>
> (2)(a) Except as provided in Subsection (7) or Subsection 19–4–104(1)(a), public water supplies, whether state, county, municipal, or district, may not have fluori[d]e added to or removed from the water supply without the approval of a majority of voters in an election in the area affected.
>
> . . .
>
> (3) If a majority of voters on an opinion question under Subsection (2)[ ] approve the addition of fluori[d]e or the removal of fluori[d]e from the public water supplies within the county, the local health departments shall require the addition of fluori[d]e to or the removal of fluori[d]e from all public water supplies within that county other than those systems:
>
> > (a) that are functionally separate from any other public water systems in that county;
> >
> > . . .
>
> (7) (a) *A supplier may not add fluori[d]e to or remove fluori[d]e from a corporate public water system unless the majority of the votes cast by the shareholders of the corporate public water system authorize the supplier to add or remove the fluori[d]e.*
>
> > (b) If a corporate public water system's shareholders do not vote to add fluori[d]e under Subsection (7)(a), the supplier shall annually provide notice to a person who receives water from the corporate public water system of the average amount of fluori[d]e in the water.

Utah Code Ann. § 19–4–111 (Supp.2009) (emphasis added).

¶ 23 The statute defines a "corporate public water system" as "a public water system

that is owned by a corporation engaged in distributing water only to its shareholders." *Id.* § 19–4–111(1)(a). Under this statute, if an entity demonstrates it is a corporate public water system, the authority to make the decision to fluoridate or not fluoridate its water supply is vested in the shareholders of that entity not the voters of the corresponding county. *See id.* § 19–4–111(7)(a). Although individuals other than shareholders may be the primary consumers of the company's water, the decision to fluoridate does not belong to them; it belongs to the shareholders. Thus, the next question we must answer is whether Holliday Water is a corporate public water system as defined by the amended statute.

## II. HOLLIDAY WATER IS A "CORPORATE PUBLIC WATER SYSTEM" AS DEFINED BY UTAH CODE SECTION 19–4–111(1)(a)

■ ¶ 24 The parties vigorously dispute whether Holliday Water meets the definition of a "corporate public water system" under Utah Code section 19–4–111(1)(a) (Supp. 2009). Holliday Water believes that it is so obvious that it qualifies as a corporate public water system, that it asks us to take judicial notice of this as a fact. In support of taking judicial notice of its status, Holliday Water directs us to: (1) a statement we made in *Holliday Water Co. v. Lambourne*, 24 Utah 2d 97, 466 P.2d 371 (1970), (2) a definition from the Utah Safe Water Drinking Act, and (3) a letter from the Public Service Commission. Holliday Water next asserts that even without taking judicial notice of its status, we should conclude that Holliday Water falls squarely within the definition of a corporate public water system under the plain language of the statute.

¶ 25 Salt Lake County disagrees. First, the County argues that under Utah Rule of Evidence 201 we cannot take judicial notice of a record in a different case or proceeding, or of a fact in dispute. Next, the County argues that Holliday Water does not meet the definition of a corporate public water system under the plain language of the statute.

¶ 26 We decline to take judicial notice that Holliday Water is a corporate public water system. Instead, we conclude that this issue is best resolved by means of statutory interpretation.

¶ 27 When interpreting statutes, "we look first to the plain language of the statute," and give effect to that language unless it is ambiguous. *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 520 (Utah 1997). In doing so, "our primary goal is to evince the true intent and purpose of the Legislature." *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276 (internal quotation marks omitted).

¶ 28 Utah Code section 19–4–111(1)(a) defines a "corporate public water system" as "a public water system that is owned by a corporation engaged in distributing water only to its shareholders." There is no dispute that Holliday Water is a corporation that operates a public water system. Rather, the parties' disagreement over the statute centers on whether Holliday Water distributes water only to its shareholders.

¶ 29 Holliday Water distributes water to shareholders through "connections" or "meters." Once the water is distributed, the shareholders are then free to use or redistribute the water as they desire. They are free to provide water to nonshareholders, whether family, renters, or strangers.

¶ 30 Although Salt Lake County concedes that Holliday Water distributes water only to meters associated with its shareholders, Salt Lake County contends that because water from those meters may eventually find its way to nonshareholders and other retail customers, Holliday Water does not qualify as a corporate public water system.

¶ 31 The County's argument is unpersuasive. The phrase "engaged in distributing water only to its shareholders" is clear and unambiguous; we therefore need not expand our search for meaning beyond the text of the statute.[4] *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994) ("Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations.") Under the plain language of the statute, a corporation operating a public water system satisfies the definition of a corporate public water system so long as the corporation's water is delivered exclusively to the shareholders of the corporation. How, where, and to whom the water travels after it is in the shareholders' possession is of no consequence.[5] Because it is undisputed that Holliday Water distributes water only to meters assigned to

---

4. Although we decline to undertake a comprehensive analysis of the lawmakers' intent behind this statute, we note that the legislative history in this case leaves us no doubt as to whom the "corporate public water system" definition was meant to apply. As Salt Lake County conceded at oral argument, the "corporate public water system" exemption and its related statutory amendments were passed as a direct result of the lobbying efforts of Holliday Water's shareholders, and in an attempt to achieve an exemption from Salt Lake County Health Department's fluoridation requirement.

5. Although we decline Holliday Water's invitation to take judicial notice of its "corporate public water system" status, we note that the statutory definition of a corporate public water system strongly resembles the description of a "mutual water company" contained in our case law. *See, e.g., E. Jordan Irr. Co. v. Morgan*, 860 P.2d 310, 311 n. 1 (Utah 1993) (defining a "mutual water company" as a "nonprofit corporation formed to supply water only to its shareholders").

We find these mutual water cases and their discussion of the distribution of company water

to shareholders to be instructive. Indeed, they illustrate the principle that once the water is distributed to a meter, it becomes the property of a shareholder and the corporation no longer has control over how the water is used. *See id.* at 318 ("The mutual water corporation is under a perpetual duty to deliver water to the shareholder; it may not decide that it would rather deliver the water to someone else or for some other purpose.... [It is] [t]he shareholder, not the corporation, [who] decides whether to use his or her water on certain crops, for domestic use," or whether to use the water for any purpose at all. (citation omitted)); *Baird v. Upper Canal Irr. Co.*, 70 Utah 57, 257 P. 1060, 1065 (1927) (same); *see also Consol. Peoples Ditch Co. v. Foothill Ditch Co.*, 205 Cal. 54, 269 P. 915, 920 (1928) ("The term 'Mutual Water Company[]'... has no defined legal meaning which would serve to differentiate corporations, organized for the acquiring of water rights and the distribution of water, from other corporations owning and administering property for the benefit of their stockholders").

its shareholders, we hold that Holliday Water qualifies as a corporate public water system under the amended statute and that it has no statutory obligation to fluoridate its water supply.

¶ 32 Having determined that Holliday Water meets the definition of a corporate public water system under the statute, we now address Salt Lake County's argument that Holliday Water must comply with Regulation 33 notwithstanding the application of the amendments to Utah Code section 19–4–111.

## III. HOLLIDAY WATER MAY STILL BE BOUND BY A PREEXISTING CONTRACT TO COMPLY WITH SALT LAKE VALLEY HEALTH DEPARTMENT'S REGULATION 33

¶ 33 Salt Lake County argues that notwithstanding the amendments to Utah Code section 19–4–111, Holliday Water may still be required to fluoridate its water supply under an express agreement it made with the County before section 19–4–111 was amended. Salt Lake County renews its argument that the new statute should not apply retroactively to invalidate contracts that were in force before the amendments were passed.[6]

¶ 34 In contrast, Holliday Water asserts that every Utah contract is entered into with the knowledge that "the State Legislature can, in the exercise of its police powers, pass laws reasonably necessary to secure the health, safety, and general welfare of the community regardless of whether such laws or regulations affect contracts incidentally, directly or indirectly." Holliday Water argues that any agreement it may have entered into with the County is subject to current law, and thus, even if Holliday Water agreed to fluoridate its water supply by express contract or otherwise, to require Holliday Water to comply with that promise now would be to force it to commit an "illegal act."

¶ 35 While it is true that when a legislative enactment renders preexisting contract terms illegal the contract may be deemed unenforceable; it is also true that preexisting contracts at odds with new legislation will not automatically be deemed invalid. Rather, we must conduct a balancing test to determine whether "the interest in [enforcing the contract] is clearly outweighed ... by a public policy against the enforcement of such terms." Restatement (Second) of Contracts § 178 (1981); *see also* 15 Corbin on Contracts, § 89.16 (1993).

### A. The 2009 Amendments to Utah Code Section 19–4–111 Do Not Automatically Invalidate Preexisting Contract Obligations

¶ 36 "Despite the general rule that every contract in violation of [the] law is void, the fact that a contract serves a prohibited purpose does not necessarily make the contract unenforceable." *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 39, 48 P.3d 918 (internal quotation marks and citations omitted). "[T]he court must then determine whether [the] statute or public policy demands that the contract be held unenforceable." *Id.* In doing so, a court should "look at the over-all picture ... and determine upon the facts of the individual case whether the ends of justice demand that relief be granted." *McCormick v. Life Ins. Corp. of Am.*, 6 Utah 2d 170, 308 P.2d 949, 952 (1957). This analysis includes both an identification of the purpose of enforcing the new legislation, as well as the public policy of preserving the freedom to contract. *See* 15 Corbin on Contracts, § 79.4 (1993) ("[C]onclusions on enforceability" are made "by weighing the particular public policy at issue against the damage that the freedom of contract may suffer if the court does not enforce the contract.").

¶ 37 The 2009 amendments to section 19–4–111 are irrelevant to the protection of the health, safety, and welfare of the citizens in Salt Lake County. Instead, the purpose of the 2009 amendments is to shift the decision to add or discontinue the addition of fluoride to a water system from the citizens in the affected area to the shareholders who own the water system. *See* Utah Code Ann. § 19–4–111(7)(a). This shift in political pow-

---

**6.** The issue of whether the parties have an enforceable express agreement or an agreement by estoppel is a separate action that remains pending in the district court.

er does not establish a legislative preference for fluoridation, but rather a policy of granting corporate public water systems the autonomy and power to make their own fluoridation decisions.

¶ 38 Unless Holliday Water lacked the power to enter into the alleged contract before these amendments were passed, its decision to enter an agreement with the County was also an exercise of its autonomy. To the extent that the enforcement of contracts does not clearly contravene public rights or the general welfare, it is the function of this court to enforce and maintain contracts rather than to enable parties to avoid their contractual obligations. *See Baltimore & Ohio Sw. R. Co. v. Voigt,* 176 U.S. 498, 505, 20 S.Ct. 385, 44 L.Ed. 560 (1900); *DeVetter v. Principal Mut. Life Ins. Co.,* 516 N.W.2d 792, 794 (Iowa 1994) ("For a court to strike down a contract on [public policy] grounds, it must conclude that the preservation of the general public welfare imperatively ... demands invalidation so as to outweigh the weighty societal interest in the freedom of contract.").

¶ 39 Passing a law that allows shareholders to vote against the addition of fluoride to drinking water is irrelevant to public safety because it neither mandates nor prohibits the fluoridation of water. Therefore, freely entered contracts, legal when executed, that implement fluoride practices in a manner made illegal by the amended version of section 19–4–111 will not be displaced.

¶ 40 Because we have concluded that no overriding public policy interest prevents enforcement of an alleged preexisting contract, we now turn to the question of whether the 2009 amendments should apply retroactively to govern preexisting private contracts that may have been entered in this case. We are persuaded by Salt Lake County's argument that the 2009 amendments should not invalidate any preexisting contract between the parties.

**B.  *The 2009 Amendments Will Not Apply Retroactively to Invalidate Any Preexisting Contract***

¶ 41 As a general rule, we apply the version of the statute in effect "at the time of the events giving rise to [the] suit." *Taghipour v. Jerez,* 2002 UT 74, ¶ 5 n. 1, 52 P.3d 1252. Indeed, the Utah Code expressly restricts retroactive application of legislative changes by stating "[n]o part of these revised statutes is retroactive, unless expressly so declared." Utah Code Ann. § 68–3–3 (2008). When no such declaration of retroactive application is present in a legislative amendment, we must apply the statute in effect at the time of the controversy unless one of two exceptions apply: (1) the legislative change merely "clarif[ies] the meaning of an earlier enactment," *Utah Dep't of Soc. Servs. v. Higgs,* 656 P.2d 998, 1001 (Utah 1982) or (2) the amendment changed the prior law in a purely procedural way that does not affect the substantive rights of the parties. *See Harvey v. Cedar Hills City,* 2010 UT 12, ¶ 14, 227 P.3d 256 (stating retroactive application is permissible "if the amended version of the statute does not enlarge, eliminate, or destroy vested or contractual rights" (alteration and internal quotation marks omitted)); *Brown & Root Indus. Serv. v. Indus. Comm'n,* 947 P.2d 671, 675 (Utah 1997) (same).

¶ 42 Utah Code section 19–4–111 (Supp. 2009) contains no language about retroactive application; therefore, to determine if the amendments will override a possible private contract, we must determine whether the 2009 amendments to the statute are merely procedural or for clarification, or if they affect the substantive rights of the parties. We conclude that the 2009 amendments were not procedural in nature, and that they possibly affected vested contractual rights that existed before the changes to the statute were made.

**1.  The 2009 Amendments Do More Than Merely Clarify the Meaning of an Earlier Enactment**

¶ 43 It is well established in our case law that "when the purpose of an amendment is to clarify the meaning of an earlier [statute], the amendment may be applied retroactively in pending actions." *Due South, Inc. v. Dep't of Alcoholic Beverage Control,* 2008 UT 71, ¶ 14, 197 P.3d 82 (alter-

ation in original) (quoting *Kilpatrick v. Wiley*, 2001 UT 107 ¶ 59, 37 P.3d 1130). An amendment serves as a clarification when it corrects a discrepancy or merely "amplif[ies] ... how the law should have been understood prior to [the amendment]." *Richards Irr. Co. v. Karren*, 880 P.2d 6, 8 (Utah Ct. App.1994) (internal quotation marks omitted). In cases of doubt or uncertainty as to the character of an amendment, the title or preamble to a statutory amendment may be examined to clarify the purpose of the change. *See, e.g., Shelter Am. Corp. v. Ohio Cas. & Ins. Co.*, 745 P.2d 843, 845 (Utah Ct.App.1987) (noting the preamble to a statutory amendment stated that the purpose of the amendment was to clarify that a "mobile home" constituted a "motor vehicle," under the statute).

¶ 44 When we examine the 2009 amendments to Utah Code section 19–4–111, nothing in their text appears to be an attempt to clarify preexisting language. Rather, the amendments add a new subsection to the statute providing an additional exemption to the fluoridation requirement that did not exist in any form before the amendments were made. Should there be any doubt as to the character of these amendments, the preamble to Senate Bill 29, amending section 19–4–111, is instructive. It states, "[t]his bill defines terms; requires the majority of the voting shareholders of a corporate public water system to approve the addition or removal of fluori[d]e in the public water system; and makes technical changes." *See* Safe Drinking Water Act Amendments, ch. 371 § 1, 2009 Utah Laws 2029–30. This language makes clear that the amendment added a substantive requirement to the statute and was more than a mere clarification. We find the language in our case of *Salt Lake Union Stock Yards v. Tax Comm'n*, to be applicable to describe the situation:

> In this case we see no room for the argument that the Legislature intended to give a definition retroactively to words used in a previous enactment. There is no language used in the ... amendment from which this can be inferred. [The amendment] is clearly an attempt to extend [a new] exemption to [another class] of [individuals].

93 Utah 166, 71 P.2d 538, 541 (1937). Senate Bill 29 was not a mere clarification of the law; it was an affirmative addition of a new exemption to the statute. We now turn to whether this addition was procedural in nature, or if it affected the substantive rights of the parties.

**2. The 2009 Amendments Are Not Procedural Because They Grant Corporate Public Water Systems a Right That Did Not Previously Exist**

¶ 45 As we stated above, the "substantive law to be applied throughout an action is the law in effect at the date the action was initiated." *Higgs*, 656 P.2d at 1000. An exception to this rule applies when a law is merely procedural rather than substantive in nature. *See id.* at 1000–01. A change to a law is procedural when it does not "enlarge, eliminate, or destroy any vested or contractual rights of the parties." *Due South*, 2008 UT 71, ¶ 15, 197 P.3d 82 (internal quotation marks omitted). A change is substantive "where the new statute establishes a primary right and duty which was not in existence at the time [the claim] arose." *Ball v. Peterson*, 912 P.2d 1006, 1009 (Utah Ct.App.1996) (internal quotation marks omitted).

¶ 46 We are persuaded that adding an exemption from the fluoridation requirement for "corporate public water systems" was not merely procedural in nature. Rather, we find that this change affected the structure, purpose, and key elements of Utah's fluoridation statutes. Utah law takes up the subject of fluoridation within the Safe Drinking Water Act in sections 19–4–101 to –112 of the Utah Code. Fluoridation of drinking water is mandated where the addition of fluoride is approved in a general election. Before the 2009 amendments added specific exemptions for corporate public water systems, these systems were required to comply with this fluoridation requirement. After the amendments, corporate public water systems were exempt from fluoridation. It is hard to envision a more substantive change than mandating an action under one statute and taking away that obligation in another.

¶ 47 Because the 2009 amendments to Utah Code section 19–4–111 vested corporate public water systems with a right they previously did not have, the amendments were substantive in nature, and we decline to apply them retroactively to displace any terms in enforceable preexisting contracts entered into by Salt Lake County and Holliday Water before the amendments were made. Whether or not Salt Lake County and Holliday Water have an enforceable contract is not squarely before us on this appeal and should be determined in the pending action before the district court.

## CONCLUSION

¶ 48 Because we conclude that the amendments to Utah Code section 19–4–111 moot Holliday Water's statutory obligation to fluoridate its water supply, we vacate the judgment of the district court, and remand with instructions to dismiss the complaint as moot. Although we conclude that Holliday Water has no statutory obligation under current law to comply with Salt Lake County Health Department's Regulation 33, Holliday Water may have a contractual obligation to fluoridate its water supply. The issue of whether a preexisting contract was entered between the parties that requires Holliday Water to fluoridate its water supply is presently pending in a separate action before the district court.

¶ 49 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.

¶ 50 Justice WILKINS acted on this opinion prior to his retirement.